**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 19, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff – Appellee,

v.

      No. 04-2256

RANDALL ZUNIE,

      Defendant – Appellant.

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-03-1453 WJ)**

---

William G. Stripp, Ramah, New Mexico for the Defendant – Appellant.

Kyle T. Nayback, Assistant United States Attorney, (David C. Iglesias, United States Attorney with him on the brief) for the Plaintiff – Appellee.

---

Before **LUCERO**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **TYMKOVICH**, Circuit Judge.

---

**LUCERO**, Circuit Judge.

Shortly before midnight one evening, Randall Zunie, dangerously drunk and recklessly out of control, drove his truck into the opposite lane of traffic and collided head-on with a smaller vehicle. The collision left a four-year-old boy

permanently and severely disabled.  Following a jury trial, the federal government obtained a conviction against Zunie for assault resulting in serious bodily injury. Zunie appeals, arguing that he lacked the requisite mens rea to suffer conviction. Because we conclude that a finding of recklessness supports a conviction for assault resulting in serious bodily injury, we **AFFIRM** Zunie's conviction. Additionally, although we **AFFIRM** Zunie's sentence, we **REMAND** for the district court to set an appropriate restitution payment schedule.

**I**

Careening down a 45 mph road at a speed exceeding 70 mph, Randall Zunie swerved between lanes in his one-ton truck and forced five or six vehicles off the road and onto a gravel shoulder.  He then crossed into the opposite lane of traffic, heading directly toward Carla Laweka's half-ton pickup truck.  Laweka attempted to evade Zunie, but to no avail.  Zunie struck her vehicle head-on.  After the collision, Laweka's four-year-old child, Nicky, lay unconscious on the floor. Laweka and her other child, Kayla, were in pain from serious injuries.

Kayla managed to roll down the truck's window and escape the smoke-filled cab.  Despite a fractured left wrist, Laweka picked Nicky up and passed him through the window to Kayla.  Laweka then crawled out of the truck through her own window.  After laying Nicky on the ground, Laweka saw Zunie staggering toward her family with bloodshot eyes and reeking of alcohol.  Zunie put his arm around Laweka and asked, "what's wrong?  What happened?"  Laweka pushed

Zunie away, at which point he returned to his truck and attempted to start the engine.  When his truck would not cooperate, Zunie packed some items from his cab into a brown paper sack and fled into the woods while sirens blared in the background, announcing the imminent arrival of emergency vehicles.

Due to severe head injuries sustained in the crash, Nicky has lost all ability to speak, move, or swallow food and water.  He has lost control of his bowel and bladder and cannot keep his head elevated for a prolonged period of time.  He is totally dependent on others for his care, which is being administered by his parents and a team of medical professionals.

Because Zunie and the Lawekas are Zuni Indians and the collision occurred on the Zuni Reservation, the Indian Major Crimes Act ("IMCA"), 18 U.S.C. § 1151 et. seq., limited the range of criminal charges available to the federal government.  Pursuant to the IMCA, the federal government has jurisdiction to charge Indians with a select few crimes against other Indians for incidents occurring on Indian land.  These crimes include murder, manslaughter, kidnapping, rape, maiming, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, and robbery.  See 18 U.S.C. § 1153(a).  The government elected to charge Zunie with assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6) and 1153.  The jury returned a verdict of guilty and the district court denied Zunie's subsequent motion for judgment of acquittal.

In sentencing Zunie, the court adopted the factual findings of the pre-sentence report ("PSR"), which calculated Zunie's base offense level at 15. The PSR added six levels pursuant to U.S.S.G. § 2A2.2(b)(3)(C) because the victim sustained permanent or life-threatening bodily injury and added two levels for "making false statements, not under oath, to law enforcement officers." U.S.S.G. § 3C1.1. Starting from the PSR's recommended offense level of 23, the district court departed upwards fifteen levels. With the departures, Zunie faced an offense level of 38, which carries a guideline imprisonment range of 235 to 293 months. The statutory maximum for the underlying offense, however, is 120 months. Therefore, the court sentenced Zunie to the statutory maximum. The court also imposed an alternative sentence of 120 months "in the event the guidelines are determined to be unconstitutional." Zunie appeals his conviction and sentence.

## II

To convict Zunie of assault resulting in serious bodily injury, the government had to prove: (1) that Zunie assaulted Nicky; (2) that Nicky suffered serious bodily injury; (3) that the assault occurred in Indian country; and (4) that Zunie is an Indian. See 18 U.S.C. §§ 113(a)(6) and 1153. Zunie argues that insufficient evidence supports the jury's verdict because the government failed to prove the first element, viz., that Zunie is guilty of assault. Specifically, he asserts that he lacked a culpable mens rea. We review challenges to the

- 4 -

sufficiency of the evidence de novo and "ask only whether taking the evidence –

both direct and circumstantial, together with the reasonable inferences to be

drawn therefrom – in the light most favorable to the government, a reasonable

jury could find the defendant guilty beyond a reasonable doubt."  United States v.

McKissick, 204 F.3d 1282, 1289 (10th Cir. 2000) (quotations and citations

omitted).  The government presented sufficient evidence that Zunie acted

recklessly, and we conclude that recklessness is a culpable mens rea with respect

to assault resulting in serious bodily injury under § 113(a)(6).

We have previously held that assault resulting in serious bodily injury is a

general intent crime.  See United States v. Benally, 146 F.3d 1232, 1237 (10th

Cir. 1998) ("It is not necessary that defendant have assaulted the victim with the

intent to do serious bodily harm – the resulting serious bodily injury coupled with

the general intent to assault is sufficient to satisfy the elements of the felony").

In the common law, crimes are classified as either "general intent" or "specific

intent" crimes.  "This venerable distinction, however, has been the source of a

good deal of confusion."  United States v. Bailey, 444 U.S. 394, 403 (1980).

Federal courts have adopted inconsistent definitions of "general intent" and

"specific intent."  See, e.g., W. LaFave & A. Scott, Handbook on Criminal Law

§ 28, at 201-202 (1972) (describing the various formulations of "general intent"

and "specific intent").  In this circuit, we chose the following distinction:  "A

specific intent crime is one in which an act was committed voluntarily and

- 5 -

purposely with the specific intent to do something the law forbids. In contrast, a general intent crime is one in which an act was done voluntarily and intentionally, and not because of mistake or accident." United States v. Blair, 54 F.3d 639, 642 (10th Cir. 1995) (quotations and citations omitted). In other jurisdictions, by contrast, "'general intent' will be used to characterize an intent to do something on an undetermined occasion, and 'specific intent' to denote an intent to do that thing at a particular time and place." LaFave & Scott § 28, at 202. Frustration with this ad hoc approach "led to a movement away from the traditional dichotomy of intent and toward an alternative analysis of mens rea . . . exemplified in the American Law Institute's Model Penal Code." Bailey, 444 U.S. at 403-04.

The Model Penal Code suggests replacing conceptions of "specific intent" and "general intent" with a "hierarchy of culpable states of mind," including (1) purpose, (2) knowledge, (3) recklessness, and (4) negligence. Id.[1] What the

_____

[1] Section 2.02(2) of the Model Penal Code defines each level of culpability:

(a) Purposely.
A person acts purposely with respect to a material element of an offense when:
(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and
(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

(continued...)

common law would traditionally consider a "general intent" crime, such as assault

resulting in serious bodily injury, encompasses crimes committed with purpose,

knowledge, or recklessness. See Model Penal Code § 2.02(3) ("When the

culpability sufficient to establish a material element of an offense is not

prescribed by law, such element is established if a person acts purposely,

knowingly or recklessly with respect thereto. . . . There is a rough

---

[1](...continued)
(b) Knowingly.
A person acts knowingly with respect to a material element of an offense when:
(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

(c) Recklessly.
A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

(d) Negligently.
A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

correspondence between this provision and the common law requirement of 'general intent.'"); see also United States v. Lewis, 780 F.2d 1140, 1142-1143 (4th Cir. 1986) (noting that assault resulting in serious bodily injury is a general intent crime because "[i]n the absence of an explicit statement that a crime requires specific intent, courts often hold that only general intent is needed"). The Model Penal Code's approach accords with our formulation of "general intent" crimes, as a crime committed with purpose, knowledge, or recklessness amounts to an act "done voluntarily and intentionally." Blair, 54 F.3d at 642. Similarly, our definition of "general intent" crimes specifically excludes acts committed "because of mistake or accident," id., just as the Model Penal Code does not include "negligence" as a relevant mens rea for "general intent" crimes. Model Penal Code § 2.02(3).

Thus, under the Model Penal Code, an individual who acts purposely, knowingly, or recklessly possesses a culpable mens rea with respect to general intent crimes. This conclusion accords with the approach taken by the Eighth and Ninth Circuits, the only two circuit courts to have considered what constitutes the relevant mens rea for assault resulting in serious bodily injury under § 113(a)(6). In United States v. Loera, 923 F.2d 725 (9th Cir. 1991), the Ninth Circuit addressed this issue in a case with nearly identical facts to the matter before us. After consuming a significant amount of alcohol, the defendant, a Native American, drove his truck on an Indian reservation. His erratic driving forced at

least one vehicle off the road before he crossed the center line and collided with a small car. The defendant was convicted of assault resulting in serious bodily injury based on evidence that he severely injured a five-year-old passenger in the other vehicle. Rejecting a challenge to the sufficiency of the evidence, the court looked to the common law and determined that "[a]t common law a criminal battery was shown if the defendant's conduct was reckless." Id. at 728. The jury had before it sufficient evidence to convict because the defendant's conduct "showed a reckless disregard for the safety of others." Id. Explicitly following the reasoning of Loera, the Eighth Circuit held in United States v. Ashley, 255 F.3d 907 (8th Cir. 2001), that the defendant possessed "the necessary mens rea to constitute assault resulting in serious bodily injury" because he "not only chose to drive drunk, but he also knew the van's brakes didn't work properly." Id. at 911; see also Model Penal Code § 211.1(2)(a) ("A person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life").

Based on our case law, and the persuasive authority provided by the Model Penal Code and the decisions of our sister circuits, we hold that a finding of purpose, knowledge, or recklessness supports a conviction for assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(6). If, taking the evidence in the light most favorable to the government, a reasonable jury could

have found that Zunie acted purposely, knowingly, or recklessly, then sufficient evidence supports the jury's verdict in this case.[2]

There is no evidence that Zunie acted purposely or knowingly. Therefore, the jury's verdict must stand on evidence that he acted recklessly. The jury heard evidence that Zunie drove his one-ton truck while intoxicated and exceeded the speed limit by over 25 mph, that he drove so erratically that he forced five or six vehicles off the road, that he crossed the center line into the opposite lane of traffic, and that, despite Laweka's attempts to evade collision, Zunie struck Laweka's vehicle head-on. Taking this evidence in the light most favorable to the

---

[2] Assault resulting in serious bodily injury under 18 U.S.C. § 113(a)(6) is a crime of violence within the meaning of 18 U.S.C. § 16(a). See United States v. Reano, 298 F.3d 1208, 1210 (10th Cir. 2002). According to the terms of § 16(a), a crime of violence is "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ." On appeal, Zunie cites to Leocal v. Ashcroft, 543 U.S. 1 (2004), for the proposition that offenses "which either do not have a mens rea component or require only a showing of negligence in the operation of a vehicle, are not crimes of violence under 18 U.S.C. § 16." Appellant's Br. at 13. Zunie accurately summarizes Leocal's holding. The Court in Leocal ruled that a Florida statute does not constitute a crime of violence under 18 U.S.C. § 16(a) because the offense, "while it requires proof of causation of injury, does not require proof of any particular mental state." Leocal, 543 U.S. at 7. Nor are statutes that "require only proof that the person acted negligently in operating the vehicle" crimes of violence under § 16(a). Id. at 8. Our holding today is consonant with Leocal. Conviction for assault resulting in serious bodily injury under 18 U.S.C. § 113(a)(6) requires proof that a person acted with purpose, knowledge, or recklessness; mere negligence does not suffice.

government, a reasonable jury could have found that Zunie's conduct amounted to recklessness. Therefore, sufficient evidence supports the conviction.[3]

## III

Zunie challenges the district court's decision to depart upwards fifteen levels when imposing sentence, and also argues that his sentence violates the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005). We conclude that the degree of departure was reasonable and that any Booker error is harmless.

## A

"When reviewing a district court's application of the Sentencing Guidelines, we review legal questions de novo and we review any factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." United States v. Doe, 398 F.3d 1254, 1257 (10th Cir. 2005) (quotation omitted). Zunie argues that the court's decision to impose a fifteen level upward departure was unreasonable. Because Zunie was sentenced

---

[3] In a related argument, Zunie complains that the district court improperly instructed the jury by permitting the jury to convict on the basis of recklessness. The court instructed the jury as follows: "The term 'assault' means any willful attempt or threat to inflict injury upon someone else. An act is willful when it is done voluntarily and purposefully or in reckless disregard for the safety of others, as contrasted with accidentally or carelessly." This instruction does not leave us with "substantial doubt that the jury was fairly guided . . . ." United States v. Pappert, 112 F.3d 1073, 1076 (10th Cir. 1997) (quotations and citations omitted). Rather, the instructions as a whole "accurately informed the jury of the governing law." United States v. McPhilomy, 270 F.3d 1302, 1310 (10th Cir. 2001) (quotations and citations omitted).

prior to Booker, "we are only reviewing the degree of departure, not the overall sentence, for unreasonableness." United States v. Martinez, 418 F.3d 1130, 1133 n.3 (10th Cir. 2005). In conducting this review, "we are to consider 'the district court's proffered justifications, as well as such factors as: the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, and the need to avoid unwarranted sentencing disparities.'" United States v. Okane, 52 F.3d 828, 833 (10th Cir. 1995) (quoting United States v. Flinn, 987 F.2d 1497, 1501 (10th Cir. 1993)).

Our review of the record persuades us that the degree of departure was not unreasonable. At the sentencing hearing, the court made extensive findings in support of its decision to depart upwards fifteen levels. Additionally, the court provided a comprehensive written "Statement of Reasons" for departing from the guideline range. Finding that Nicky sustained "extreme physical injuries" necessitating multiple surgeries and hospital stays, that he "has been in a semi-comatose state" since the accident and "will never again regain consciousness," that, in short, he "is not the same boy, and never will be, because of the accident caused by the defendant," the court decided to depart upwards seven levels pursuant to U.S.S.G. § 5K2.2. Because "the public's safety was significantly endangered by the defendant's reckless driving, thereby, causing five other vehicles to swerve off the road before the defendant collided with the victim's

vehicle," the court departed two levels under U.S.S.G. § 5K2.14. The court found that a two level departure under U.S.S.G. § 5K2.5 was warranted, as the guidelines did not accurately account for the amount of damage and loss. Specifically, the court found that the "severe and permanent injury to the victim has resulted in his family having to provide 24 hour, around the clock care, for the victim. Additionally, the victim's vehicle was totaled, thereby leaving the victim's family without one of their main sources of transportation."

Pursuant to U.S.S.G. § 5K2.21, the court departed four levels because the guidelines did not account for the serious physical injuries sustained by Laweka and Kayla and because Zunie was not charged with two additional counts of assault resulting in serious bodily injury. In addition, the court found that "Kayla lost several teeth and still has tiny shards of glass in one of her eyes. It should also be noted this accident occurred only days before her high school graduation. Further, Carla [Laweka] fractured her wrist and was extremely bruised throughout her body." The district court's proffered justifications amply support a fifteen level departure and the other factors guiding our review – such as the seriousness of the offense and the need for just punishment and deterrence – demonstrate that the degree of departure is reasonable.

**B**

Zunie asserts that his sentence was imposed in violation of Booker. He argues that the court committed constitutional Booker error by mandatorily

enhancing his base offense level based on facts not found by a jury and that the court committed non-constitutional <u>Booker</u> error by treating the guidelines as mandatory.  See <u>United States v. Gonzalez-Huerta</u>, 403 F.3d 727, 731-32 (10th Cir. 2005) (en banc).[4]

We review Zunie's constitutional and non-constitutional <u>Booker</u> claims for harmlessness because he raised an objection under <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), during sentencing proceedings in the court below.  <u>United States v. Labastida-Segura</u>, 396 F.3d 1140, 1142-43 (10th Cir. 2005).  Pursuant to harmless error review, any error "that does not affect substantial rights must be disregarded."  Fed. R. Crim. P. 52(a).  Because the district court, in the exercise of its discretion, departed upwards fifteen levels, because the court stated "if I had jurisdiction to do so, I would impose a sentence of 293 months," because the court sentenced Zunie to the statutory maximum of 120 months, and because the court imposed an alternative sentence of 120 months "in the event the guidelines are determined to be unconstitutional," we have little trouble concluding that any <u>Booker</u> error was harmless.  See, e.g., <u>United States v. Riccardi</u>, 405 F.3d 852, 876 (10th Cir. 2005) (finding constitutional <u>Booker</u> error harmless, in part, because there was no "reason to think that the district judge would have imposed a less severe sentence in the exercise of his post-<u>Booker</u> discretion.  On the

---

[4] The government conceded at oral argument that the district court committed non-constitutional <u>Booker</u> error.  We express no opinion on the validity of the government's concession.

- 14 -

contrary, the district judge sentenced Mr. Riccardi at the top of the applicable Guideline range"); United States v. Paxton, 422 F.3d 1203, 1207 (10th Cir. 2005) ("When the district court had undoubted discretion to reduce the sentence below what it imposed, its decision not to exercise discretion and impose a lower sentence renders any nonconstitutional Booker error harmless") (quotation omitted).

## C

Pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3663A et seq., the district court found that restitution in the amount of $1,794,469 was appropriate. "The MVRA requires the court to order restitution in any case involving a conviction for an offense that constitutes a crime of violence as defined by 18 U.S.C. § 16(a), including assault resulting in serious bodily injury." Reano, 298 F.3d at 1210. Zunie argues on appeal that the district court erred by imposing restitution without regard to Zunie's indigence and by ordering that the total amount of restitution is due "in full immediately."

According to the explicit terms of the MVRA, "[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A) (emphasis added). Therefore, by disregarding Zunie's ability to pay when calculating the total amount of restitution, the district court acted properly. However, the district

court neglected to set forth an appropriate payment schedule. The MVRA provides that, after determining the amount of restitution owed to each victim, the district court "shall . . . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid." 18 U.S.C. § 3664(f)(2). When setting a schedule of payments, the district court must consider "the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; projected earnings and other income of the defendant; and any financial obligations of the defendant; including obligations to dependents." Id.; see also United States v. Williams, 128 F.3d 1239, 1242 (8th Cir. 1997) ("The MVRA requires the district court to schedule restitution payments taking into account the defendant's resources, projected earnings, and financial obligations"). We therefore remand for the district court to set an appropriate payment schedule in light of the statutory factors.

## IV

We **AFFIRM** the conviction and sentence entered below. However, we **REMAND** for the district court to set an appropriate restitution payment schedule.