**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 1, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MAURICE FRANKLIN, JR.,

    Defendant-Appellant.

No. 05-3055
(District of Kansas)
(D.C. No. 03-CR-10151-WEB)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **SEYMOUR**, and **McCONNELL**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is, therefore, ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. Introduction

Defendant-Appellant Maurice Franklin, Jr. was charged in a twenty-four count Third Superseding Indictment with numerous robberies and related offenses that occurred in Kansas between February 4, 2001 and May 8, 2003. Franklin was tried and found guilty on ten counts, including three counts of robbery in violation of the Hobbs Act, 18 U.S.C. § 1951; four counts of using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c); two counts of unlawful possession of a firearm or ammunition by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1); and carjacking, in violation of 18 U.S.C. § 2119. He was sentenced in the United States District Court for the District of Kansas to imprisonment for a term of 1242 months. On appeal, Franklin challenges the district court's denial of his motion to suppress a photo array identification and the sufficiency of the evidence supporting his convictions. We assert jurisdiction pursuant to 28 U.S.C. § 1291 and **affirm**.

## II. Background

Franklin's convictions arose from four separate incidents. The first occurred on the evening of March 9, 2002 in Independence, Kansas. A man with a gun entered the Taco Inn restaurant, pulled a mask down over his face, and directed a customer and two employees to empty the register and their pockets. Immediately after the incident, Ryan Gilchrist, the sole customer at the Taco Inn restaurant that evening, told police officers he did not see the perpetrator's face,

but could identify his voice and eyes. Gilchrist subsequently testified at trial, however, that he did see the robber's face before he pulled the mask down over his head. Gilchrist also testified that approximately two years after the robbery, police officers presented him with a photo array and he identified Franklin as the perpetrator. Tabitha Easley, who was also at the Taco Inn restaurant on the night of the robbery, did not identify the perpetrator when she was interviewed by police after the crime. Later, however, Easley identified the robber as Franklin. She testified at trial that she could see Franklin's face through the black panty hose he wore over his head and that she recognized him from high school. Easley indicated she initially did not tell police officers Franklin was the perpetrator because Franklin threatened to kill her if she identified him.

The second incident occurred on the evening of March 11, 2002. A man rang the doorbell at the residence of Julie and Robert Strain at 607 West Maple in Independence, Kansas. When Mrs. Strain answered the door, the man, who was wearing a mask and brandishing a gun, pushed his way into the residence and demanded money. After the Strains complied by giving the man money and some jewelry, he told Mrs. Strain to remove her clothes. The man proceeded to sexually assault Mrs. Strain with the gun while her husband and two young children watched. The man then directed Mr. Strain to get the keys to his van. Pointing the gun at Mr. Strain, the man directed him to drive to Independence High School. As they were driving into the parking lot of the high school, Mr.

Strain opened the door of the van, jumped out, and ran into the high school  The man followed Mr. Strain and shot him in the leg before running away.

At trial, Mrs. Strain indicated the perpetrator was wearing a black, hooded sweatshirt, navy or black pants, and a baseball cap.  Mr. Strain identified the perpetrator as Franklin.  Mr. Strain indicated he had known Franklin for over three years and first recognized him on the night of the incident by his voice.  Mr. Strain informed several police officers that Franklin was the perpetrator immediately after the incident.  He also indicated Franklin called him "Rob," a nickname used by Mr. Strain's friends, while they were driving in the van.

The government also presented testimony from Melvin Simpson, Jr. Simpson testified that, shortly before the Strains were robbed, Franklin informed Simpson that he was going to beat up Mr. Strain.  According to Simpson, Franklin indicated Betty Kinsey had asked Franklin to beat up Mr. Strain because of a fight Mr. Strain was having with Kinsey's daughter over the custody of their child. Simpson testified Franklin was wearing black pants and a blue sweatshirt that evening when he dropped Franklin off less than a block from the Stain's residence.  Simpson indicated he met Franklin approximately twenty minutes later at a Jiffy Mart two blocks away.  At that time, Franklin told Simpson he had robbed the Strains and made Mrs. Strain take off her clothes.  Independence police detective Harry Smith, who interviewed Franklin on the night of the Strain robbery, also testified.  During the interview, Smith told Franklin that Mr. Strain

-4-

identified Franklin as the perpetrator. According to Smith, Franklin indicated he had been told the perpetrator wore a mask. Smith testified that at that time, it was not public knowledge that the perpetrator wore a mask. Smith also testified that he told Franklin Mr. Strain indicated the robber called him "Rob." Smith told the jury that Franklin accidentally responded, "I didn't call him by his name."

The third incident took place at Braum's Restaurant in Independence, Kansas on April 30, 2003. The restaurant had closed for the evening, and Tiffany Holt, an assistant manager, was in a back room counting money for the next morning's deposit. A man entered the room with a gun and demanded money. Holt put cash, checks, receipts, and credit card slips into a grey bank bag bearing a Bank of America logo and the terms "midday deposit." Holt described the perpetrator at trial as a black male wearing a blue flannel long-sleeved shirt, white long johns wrapped around his face, and a white baseball cap.

The government also presented testimony from Tamika Scott. On the evening of the Braum's Restaurant robbery, Scott was sitting on the stairs at the Garden Walk Apartments, approximately three blocks from the restaurant. Scott testified she heard sirens and then saw Franklin driving into the apartment complex at a high rate of speed. She indicated Franklin jumped out of his car, ran behind an apartment building, reappeared two minutes later, and then drove off in his car. According to Scott, when Franklin arrived at the apartment complex, he was wearing long blue jeans and when he reappeared from behind the building, he

was wearing blue jean shorts. Independence police officer Rick Troutman testified he subsequently found a grey bank bag with a Bank of America logo behind the Garden Walk Apartments while working on another case. The bag contained checks and receipts from Braum's Restaurant.

The final incident giving rise to Franklin's convictions occurred on the evening of May 8, 2003 at the Kentucky Fried Chicken ("KFC") in Coffeyville, Kansas. A masked man with a gun entered the back of the restaurant and told employees to lay down on the floor. He then took the assistant manager, Jessie Payton, to the front of the store to empty the registers and open the safe. Payton did as he was told, placing the money into a bag with a KFC logo. While the man was at the front of the restaurant, one of the employees exited out the back and ran to an adjacent building to call police.

While the robbery was in progress, Coffeyville police officer Chad Newby was in the vicinity of the KFC. After receiving a call from dispatch advising him of the robbery, Officer Newby positioned his patrol car in an alley within view of the KFC. Officer Newby subsequently witnessed a black male wearing a white shirt over his head exit the KFC and begin running. Officer Newby saw a fellow officer, Tommy Stewart, begin chasing the suspect in his car further down the street. Officer Stewart followed the suspect until he was apprehended by other officers on foot. At trial, Officer Stewart testified he only lost eye contact with

the suspect for a few seconds during the chase. The apprehended suspect was identified as Franklin.

Several of the employees working at KFC on the night of the robbery testified at trial. They described the perpetrator as a black male with tattoos on his right arm and indicated he was wearing a black football jersey and a white cloth or tank top over his head. Although none of the employees was asked to identify Franklin as the perpetrator, several identified the black jersey Franklin was wearing when apprehended by police and his tattoos as belonging to the perpetrator of the robbery. Additionally, Payton identified the bag Franklin dropped while fleeing from police as the bag he filled with money during the robbery.

## III. Discussion

### A. Photo Array Identification

Franklin argues the district court erred in refusing to suppress Ryan Gilchrist's photo array identification of Franklin as the perpetrator of the Taco Inn restaurant robbery. In considering a denial of a motion to suppress a photo array identification, we review the district court's underlying factual findings for clear error and the ultimate question of whether the identification infringed due process rights *de novo*. *United States v. Sanchez*, 24 F.3d 1259, 1262 (10th Cir. 1994). When the constitutionality of a photo array is challenged under the due process clause, this court applies a two-pronged test. *Id*. at 1261. We first

determine whether the photo array was impermissibly suggestive, considering such factors as the size of the array, the manner of its presentation by the officers, and the details of the photographs themselves. *Id*. at 1262. If the photo array is impermissibly suggestive, we determine whether the identification is nevertheless reliable under the totality of the circumstances. *Id*. Factors to consider include

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199–200 (1972). "These two prongs must be analyzed separately, and it is only necessary to reach the second prong if the court first determines that the array was impermissibly suggestive." *Sanchez*, 24 F.3d at 1262.

The district court held an evidentiary hearing on Franklin's motion to suppress the identification. The district court made the following findings of fact: Franklin was suspected in connection with a robbery in Topeka, Kansas. Police in Topeka asked Detective Smith to compile a photographic array to present to witnesses of the robbery. Smith used computer software to generate photographs of individuals with characteristics similar to Franklin. Smith then manually narrowed the twenty to forty photographs selected by the computer to five that looked similar to Franklin. The array Smith compiled contained photographs of six, relatively young, black males with similar characteristics including height

-8-

and weight, short hair, and a mustache. All of the individuals were dressed in casual street clothes, and the background of each photograph was the same. Subsequently, Special Agent Jim Carlson of the Bureau of Alcohol, Tobacco, and Firearms presented the photo array to Ryan Gilchrist. Before he was presented with the array, Gilchrist was asked to read and sign an admonition form, which indicated he should not assume the perpetrator's photograph is included in the array. Gilchrist selected Franklin's photograph as that of the individual who robbed the Taco Inn restaurant.

After an independent review of the testimony given at the evidentiary hearing and the photo array, we conclude the district court's factual findings were not clearly erroneous. Further, because the individuals pictured in the array had similar characteristics and the array was not presented in a manner that would influence Gilchrist's identification, the array was not impermissibly suggestive.[1] We therefore affirm the district court's denial of Franklin's motion to suppress the photo array identification.

---

[1]Franklin argues the identification should not have been admitted because it was made two years after commission of the crime and after Gilchrist viewed newspaper articles containing Franklin's photograph in connection with other crimes. These factors, however, do not impact our analysis of whether the array itself, or the manner of its presentation, was impermissibly suggestive. Instead, they are only relevant in assessing whether an identification is reliable in spite of an impermissibly suggestive array under the second prong of the applicable test. *See United States v. Wiseman*, 172 F.3d 1196, 1210 (10th Cir. 1999). Because we conclude the array in this case was not impermissibly suggestive, we need not reach the second prong. *United States v. Sanchez*, 24 F.3d 1259, 1262 (10th Cir. 1994).

**B. Sufficiency of the Evidence**

Franklin also challenges the sufficiency of the evidence supporting his convictions. Specifically, he contends the evidence presented identifying him as the perpetrator of each of the robberies was insufficient. Franklin notes the perpetrator wore a mask during each of the robberies and there was no DNA or fingerprint evidence linking him to the crimes.

In reviewing the sufficiency of the evidence to support a conviction, we review the record *de novo* to determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Zunie*, 444 F.3d 1230, 1233 (10th Cir. 2006). We consider both direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom. *Id*. We do not weigh conflicting evidence or consider the credibility of witnesses, but instead must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998) (quotations omitted).

After reviewing the transcript of Franklin's trial, we conclude the government presented sufficient evidence to link Franklin to each of the four incidents upon which his convictions are based. Two witnesses present during the Taco Inn restaurant robbery identified Franklin as the perpetrator. Gilchrist testified he saw Franklin's face before he pulled the mask down over his head.

Easley also identified Franklin, whom she had known in high school. Although Easley initially told police officers she could not identify the perpetrator, she explained her subsequent identification at trial by stating she was afraid to identify Franklin because he threatened to kill her.

A witness also identified Franklin as the perpetrator of the Strain robbery. Mr. Strain testified he had known Franklin for over three years and recognized him as the perpetrator by his voice. Additionally, Simpson testified he dropped Franklin off less than a block from the Strain's residence on the night of the incident after Franklin indicated he was going to beat up Mr. Strain. According to Simpson, when he saw Franklin later that evening, Franklin admitted to robbing the Strains and making Mrs. Strain take off her clothes. Finally, when Detective Smith interviewed Franklin about the Strain incident and told him Mr. Strain indicated the perpetrator had called him "Rob," Franklin responded, "I didn't call him by his name."

Although no witnesses identified Franklin as the perpetrator of the Braum's Restaurant robbery or the KFC robbery, the government presented sufficient physical and circumstantial evidence to support the convictions arising from those incidents as well. Holt, who was working at Braum's Restaurant on the night of the robbery, testified that she placed cash, checks, receipts, and credit card slips into a grey bank bag bearing a Bank of America logo and handed it to the robber. Scott testified that shortly after the Braum's Restaurant robbery occurred, she

witnessed Franklin drive into her apartment complex, change clothes behind the apartments, and leave quickly. Officers subsequently found a grey bank bag bearing a Bank of America logo behind the same apartment complex. The bag contained checks and receipts from Braum's Restaurant.

Officer Newby testified to witnessing a black male exit the KFC shortly after receiving a dispatch call regarding a robbery at that location. Police officers followed the suspect, maintaining eye contact with him for all but a few seconds. The suspect was eventually apprehended and identified as Franklin. Several KFC employees subsequently identified the black jersey Franklin was wearing when apprehended by police and his tattoos as those of the perpetrator of the KFC robbery. Considering this evidence, a rational juror could have found Franklin guilty of each offense of conviction beyond a reasonable doubt.

## IV. Conclusion

For the foregoing reasons, we **AFFIRM** Franklin's convictions.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge