**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 12, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

KIM A. JUDD,

    Defendant-Appellant.

No. 07-4191

(D.C. No. 2:04-CR-00845-DS)

(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, MURPHY,** and **HARTZ**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to honor the parties' request for a decision on the briefs without oral

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is, therefore,

submitted without oral argument.

Kim Judd pleaded guilty to being a felon in possession of a firearm and

ammunition in violation of 18 U.S.C. § 922(g)(1), and was sentenced to a 46 month term

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

of imprisonment, with an additional 36 month term of supervised release. Judd now appeals, challenging the district court's imposition of a two-point offense level enhancement for obstruction of justice in the calculation of his Sentencing Guidelines range. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

In late 2004, the Kane County, Utah sheriff's department determined that Judd's residence had been the site of several methamphetamine sales. After a confidential informant conducted a controlled buy at Judd's home, officers obtained a search warrant based, in part, on the informant's report that Judd was in possession of several firearms, despite having a prior felony conviction. The warrant, authorized by Utah Justice Court Judge F. Kirk Heaton, was executed shortly thereafter, and several firearms were seized.

A federal grand jury returned an indictment alleging that Judd had illegally possessed a firearm and ammunition. Judd initially moved to suppress the evidence obtained during the execution of the warrant. However, on the day the motion was to be argued, he withdrew the motion and entered a guilty plea. The district court sentenced him to a 63 month term of imprisonment, which Judd then appealed. We vacated the sentence and remanded for resentencing when Judd and the government informed us of their shared belief that the district court had committed a procedural sentencing error. Appellee Supp. App'x at 18-19.

At the resentencing hearing, Judd's probation officer testified regarding the possible imposition of a two-level enhancement for obstruction of justice for Judd's conduct during an exchange Judd had with Judge Heaton. After interviewing both Judd

2

and Judge Heaton, as well as reviewing a police report from the incident, the probation officer reported that several days before the scheduled trial date, Judd and his father went to Judge Heaton's home seeking to verify that the signature authorizing the warrant was not forged. Judd and his father asked the judge to sign a blank piece of paper so that they could compare the two signatures. Judge Heaton refused, but proposed instead that they show him a copy of the warrant, and he would then tell them whether it was his signature that appeared on the warrant. At this point, the interaction devolved into what was described as a heated argument, with the judge asking the two men to leave and, ultimately, calling the police. Judge Heaton indicated to the probation officer that while he had been on good terms with both men prior to the incident, he was fearful during the interaction.

The government argued that the exchange between Judd and Judge Heaton called for the imposition of a two-point offense level enhancement under the Sentencing Guidelines. See U.S.S.G. § 3C1.1 (2004). Judd contested the enhancement, arguing that Judge Heaton was unlikely to be called as a witness, and was therefore outside the class of people towards whom obstructive conduct could be penalized under § 3C1.1. He also claimed that his statements to Judge Heaton constituted protected First Amendment speech. The district court disagreed with Judd and applied the obstruction enhancement, resulting in a total offense level of 20. Combined with Judd's criminal history category of III, the Guidelines called for a sentencing range of 41-51 months. The court imposed a within-Guidelines sentence of 46 months' imprisonment followed by a 36 month term of

3

supervised release. Judd now appeals the imposition of the obstruction enhancement.

The Guidelines call for a two-level enhancement where

> (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense[.]

U.S.S.G. § 3C1.1. The commentary to this provision provides an example of the types of conduct to which this enhancement applies, "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." Id. § 3C1.1 cmt. n.4(a).

After United States v. Booker, 543 U.S. 220 (2005), we review sentences for reasonableness, "encompass[ing] both the reasonableness of the length of the sentence, as well as the method by which the sentence was calculated." United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006). In our review of the application of a specific enhancement, we review a district court's legal determinations de novo and any factual findings for clear error. United States v. Zunie, 444 F.3d 1230, 1236 (10th Cir. 2006). The evidence and any inferences that may be drawn from it are construed in the light most favorable to the district court's determination. United States v. Walters, 269 F.3d 1207, 1214 (10th Cir. 2001).

Judd first claims that the district court erred in applying an enhancement for obstructing justice under § 3C1.1 because the evidence was not sufficient to establish that

4

he "threaten[ed], intimidat[ed], or otherwise unlawfully influenc[ed]" Judge Heaton. In the district court, the government had the burden to establish by a preponderance of the evidence that Judd's conduct warranted a § 3C1.1 enhancement. United States v. Ivory, 532 F.3d 1095, 1103 (10th Cir. 2008). On appeal, we will only reverse the district court's factual finding that Judd's actions "rose to the level of threatening, intimidating, or otherwise unlawfully influencing" Judge Heaton if we deem it to be clearly erroneous–that is, if "the district court's finding was without factual support in the record or we are left with the definite and firm conviction that a mistake has been made." United States v. Dalton, 409 F.3d 1247, 1251 (10th Cir. 2005).

The evidence presented was legally sufficient to support an obstruction enhancement. Judd, a criminal defendant suspected of involvement in methamphetamine distribution and under federal indictment for illegally possessing a firearm, went to a judge's private home and demanded a sample of the judge's signature. When Judge Heaton refused, the conversation resulted in Judge Heaton requesting police intervention. The exchange was described as "heated," and the Judge indicated he was "somewhat fearful." Aplt. App'x at 23. From this evidence, the district court could reasonably infer either that Judd "threaten[ed], intimidat[ed], or otherwise unlawfully influenc[ed]" Judge Heaton, or attempted to "threaten[], intimidat[e], or otherwise unlawfully influenc[e]" Judge Heaton.

Judd suggests that because Judge Heaton knew Judd prior to the incident, and that this incident took place in a small town where everyone knew each other, the seriousness

5

of the encounter is mitigated. We reject this argument. The contextual facts Judd notes do not leave this court "with the definite and firm conviction that a mistake has been made." Even accepting the existence of some sort of pre-existing relationship, the precise nature of which is ambiguous from the record, nothing about those facts preclude the district court's finding regarding the character of the exchange. There was no need for Judd to instigate this encounter. Judd could have just as easily requested verification of Judge Heaton's signature through formal legal channels, rather than taking the potentially intimidating step of seeking such verification through an unannounced visit to the judge's home.

Judd also makes the legal argument that because the commentary to § 3C1.1 limits the provision's scope to the threatening, intimidating, or influencing of "co-defendant[s], witness[es], and juror[s]," the enhancement is inapplicable. He claims that Judge Heaton was not, and could not have been, a witness. We affirm the district court's rejection of this argument.

The examples listed in the commentary to § 3C1.1 are in "a *non-exhaustive* list of examples of the types of conduct to which this adjustment applies." U.S.S.G. § 3C1.1 cmt. n.4 (emphasis added). Recognizing that "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness," id. § 3C1.1 cmt. n.3, we have no difficulty in agreeing with the district court that this enhancement may be applied where an individual confronts a judge at his or her home in order to solicit evidence undermining the legitimacy of a search warrant. This conclusion is bolstered by the examples included

6

in the commentary of instances where this enhancement would not be appropriate.  See id. § 3C1.1 cmt. n.5.  Confronting a judge who authorized a search warrant more closely resembles the types of acts deemed sufficiently obstructive to warrant a § 3C1.1 enhancement, than those the commentary deems insufficient to warrant the two-level increase.  Compare id. § 3C1.1 cmt. n.4, with id. § 3C1.1 cmt. n.5.

In addition, even were we to take the more stilted view that Judd proposes and construe § 3C1.1 as only applying to traditional criminal trial witnesses, it is entirely conceivable that a judge who authorized a search warrant could be called as a witness. See, e.g.,United States v. Massey, 687 F.2d 1348, 1355-56 (10th Cir. 1982) (noting state judge's testimony at a hearing on a motion to suppress the warrant issued by that state judge).  While we recognize that such a step may be unusual, in certain instances it may be entirely appropriate, including cases, such as this one, where the authenticity of a judge's signature on a warrant is at issue.

Judd contends that he could not have included any evidence of defects in the search warrant as part of a motion to suppress because the time for filing pre-trial motions had lapsed.  He reasons that because this deadline had passed, any evidence obtained from Judge Heaton related to the legitimacy of the warrant would not have been available to him at trial, and Judge Heaton could therefore not have been a witness.  This view ignores that had he discovered such a defect, he could have requested leave to reopen the pre-trial motion deadline.  By no means was the legitimacy of the warrant beyond any challenge at the time of his conversation with Judge Heaton.

7

Judd's final argument is that his statements to Judge Heaton were protected by the First Amendment, and that the enhancement may not therefore be applied because the provision "is not intended to punish a defendant for the exercise of a constitutional right." U.S.S.G. § 3C1.1 cmt. n.2. The district court rejected this argument, saying "there may be protected speech here to some degree; but what I am saying is the totality of all that occurred on that occasion and the judge's action, it is the court's finding that there – the conduct was – rose to the level of threatening, intimidating, or otherwise unlawfully influencing." Aplt. App'x at 38-39.

"The protections afforded by the First Amendment . . . are not absolute," Virginia v. Black, 538 U.S. 343, 358 (2003), and the government remains free to punish a "true threat." Watts v. United States, 394 U.S. 705, 708 (1969) (per curiam). "A 'true threat' means 'a serious threat as distinguished from words as mere political argument, idle talk, or jest.'" United States v. Viefhaus, 168 F.3d 392, 395 (10th Cir. 1999) (quoting United States v. Leaverton, 835 F.2d 254, 257 (10th Cir. 1987)). "The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur." Black, 538 U.S. at 359-60. "[E]vidence of a recipient's response is relevant to whether a true threat exists." United States v. Magleby, 241 F.3d 1306, 1311 (10th Cir. 2001).

We agree that punishing Judd for his conduct at Judge Heaton's home did not violate the First Amendment. There is "no First Amendment right to make intimidating

threats against government witnesses." United States v. Jackson, 974 F.2d 104, 106 (9th Cir. 1992) (citing United States v. Shoulberg, 895 F.2d 882, 886 (2d Cir. 1990)). Approaching a judge's home demanding potentially exculpatory evidence has the clear effects of intimidation and apprehension of violent reprisal. While it gives us pause that a precise description of the exact words exchanged between Judd and Judge Heaton does not appear in the record, the context of the discussion, Judge Heaton's decision to seek police intervention, and the fact that the conversation left him "somewhat fearful" leaves us satisfied that Judd's statements did not constitute protected First Amendment speech.

Judd's First Amendment claim is further undermined by the fact the enhancement related to a conversation that occurred on Judge Heaton's private property after the judge requested he leave. The First Amendment does not protect a person's right to speak whenever and wherever they please. See Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72 (1942). The Supreme Court "has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only." Lloyd Corp. v. Tanner, 407 U.S. 551, 568 (1972). We have previously noted in a related situation that when determining whether a limitation on speech is reasonable, "[t]he balancing of competing rights generally has resulted in a determination that the privacy of the individual householder, even that of a public official, is entitled to protection." Garcia v. Gray, 507 F.2d 539, 544 (10th Cir. 1974). Judge Heaton's home cannot reasonably be characterized as either a public forum or private land generally open to the public. We therefore find dubious Judd's claim that

9

the First Amendment protects his expression at Judge Heaton's private home against the judge's consent. See PruneYard Shopping Center v. Robins, 447 U.S. 74, 100 n.4 (1980) (Powell, J., concurring) ("[A] law that required homeowners to permit speakers to congregate on their front lawns would be a massive and possibly unconstitutional intrusion into personal privacy and freedom of belief."); Rown v. Post Office Dep't, 397 U.S. 728, 736-37 (1970) (declaring that the right to be free from unwanted mail at a private home outweighs the right to send mail to a private home because "[t]o hold less would tend to license a form of trespass"); Garner v. Louisiana, 368 U.S. 157, 202 (1961) (The right to freedom of speech "would surely not encompass verbal expression in a private home if the owner has not consented.").

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.

Entered for the Court,


Mary Beck Briscoe
Circuit Judge