FILED
United States Court of Appeals
Tenth Circuit

May 22, 2020

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JORDAN SANDOVAL,

     Defendant - Appellant.

No. 19-2041

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:18-CR-01109-WJ-1)**
_____

John V. Butcher, Assistant Federal Public Defender, Office of the Federal Public Defender for the District of New Mexico, Albuquerque, New Mexico, appearing for Appellant.

Nicholas J. Ganjei, Assistant United States Attorney (John C. Anderson, United States Attorney, and Dustin C. Segovia, Assistant United States Attorney, on the brief), Office of the United States Attorney for the District of New Mexico, Las Cruces, New Mexico, appearing for Appellee.
_____

Before **BRISCOE**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

**BRISCOE**, Circuit Judge.
_____

Defendant-Appellant Jordan Sandoval (Sandoval) pleaded guilty to committing an

assault in Indian Country which resulted in serious bodily injury. See 18 U.S.C. §§ 1153

and 113(a)(6). He was sentenced to a prison term of 27 months. Sandoval appeals the district court's sentence as disproportionate by noting crimes either committed with greater intent or causing death are afforded only slightly higher sentencing ranges under the Guidelines. At bottom, he argues his sentence is substantively unreasonable. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I

Sandoval, after having consumed the equivalent of more than seven beers, was speeding in his vehicle on the San Felipe Indian Reservation. ROA Vol. II at 3–4. He struck Jane Doe's vehicle from behind, sending it flipping and spinning towards a ditch. *Id.* Jane Doe's pinky finger was severed in the crash. *Id.* Fortunately, the other passengers in the car, Jane Doe's young daughter and teenage brother, did not sustain serious injuries. *Id.*

Sandoval was charged with assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 1153 and 113(a)(6).[1] *Id.* at 1. He pleaded guilty without a plea agreement. The Presentence Investigation Report (PSR) calculated his base offense level at 14. *Id.* at 5. After adding a seven-level enhancement for Jane Doe's permanent injury, the adjusted offense level was 21. *Id.* Sandoval received a three-level reduction for acceptance of responsibility, resulting in a total offense level of 18. *Id.* at 6. Sandoval had no previous convictions that yielded criminal history points, although he did have two

---

[1] Relevant to Sandoval's briefing, § 113(a)(6) is the federal statute that covers what state law often terms driving under (or while under) the influence, or DWI. *See, e.g.,* N.M.S.A. § 66-8-101 (imposing a basic sentence of three years' imprisonment for "great bodily harm" caused by a vehicle, as a third-degree felony).

tribal court convictions, both of which related to the consumption of alcohol. *Id.* at 6–7. The district court adopted the proposed factual findings and Guidelines calculations in the PSR, concluding the advisory Guidelines range was 27 to 33 months. ROA Vol. III at 18–19.

Sandoval requested a downward variance,[2] asking for a sentence of one year and a day. Sandoval argued, as he does on appeal, that the variance was appropriate because the Guideline provision for aggravated assault, § 2A2.2, was not intended to cover reckless conduct, which should be punished less severely than intentional conduct. ROA Vol. I at 8–19. Sandoval also argued his sentence should be reduced because the offense level applied was only one level below where it would have been had Sandoval killed one of the occupants of the Doe vehicle. *Id.*

The district court rejected Sandoval's arguments. In particular, the district court noted that "on the involuntary manslaughter [G]uidelines, I thought the [Sentencing] Commission was woefully inadequate in terms of the advisory sentencing Guideline range for those particular offenses." ROA Vol. III at 19. The district court went on to say, "[b]ut we're not dealing here with an involuntary manslaughter. We are dealing with conduct that was extremely reckless. . . . I'll find a sentence that is sufficient, but not

---

[2] We note that Sandoval also requested a downward departure in his sentencing memorandum. ROA Vol. I at 8. But "[w]e have no jurisdiction to review a district court's discretionary decision to deny a motion for downward departure on the ground that a defendant's circumstances do not warrant the departure." *United States v. Shuck*, 713 F.3d 563, 570 (10th Cir. 2013) (internal citations and quotations omitted). Thus, we do not review the district court's decision not to depart from the Guidelines.

3

greater than necessary to satisfy the goals of sentencing is a commitment to the custody of the Bureau of Prisons on the low end of the [G]uidelines at 27 months." *Id.* at 19–20.

## II

Sandoval challenges his sentence as substantively[3] unreasonable. His arguments are predicated purely on policy disputes with the Guidelines.[4] First, he argues that the applied Guideline, § 2A2.2, does not adequately reduce sentences when the assault is committed recklessly; and that, because his adjusted offense level is only one level below the base offense level for involuntary manslaughter involving the reckless operation of a means of transportation, it is disproportionately high.

"We review the substantive reasonableness of a sentence for abuse of discretion." *United States v. Chavez*, 723 F.3d 1226, 1233 (10th Cir. 2013) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). "[W]e will find an abuse of discretion only if the district court was arbitrary, capricious, whimsical, or manifestly unreasonable when it weighed the permissible § 3553(a) factors." *United States v. Craig*, 808 F.3d 1249, 1261 (10th Cir. 2015) (internal citations and quotations omitted). "In our circuit, 'a within-guideline-range sentence that the district court properly calculated . . . is entitled to a rebuttable presumption of reasonableness' on appeal." *United States v. Wireman*, 849 F.3d 956, 964

---

[3] Sandoval does not argue his sentence was improperly calculated or otherwise procedurally deficient. *See* Aplt.'s Br. at 4 n.3.

[4] In *United States v. Yazzie*, 704 F. App'x 767 (10th Cir. 2017), we addressed and rejected policy arguments which are almost identical to those raised here. We cite *Yazzie* not as binding precedent, but only for its persuasive value. *United States v. Engles*, 779 F.3d 1161, 1162 n.1 (10th Cir. 2015) (citing 151 F.R.D. 470 (10th Cir. 1993) (containing General Order of November 29, 1993) and 10th Cir. R. 32.1 (2015)).

(10th Cir. 2017) (quoting *United States v. Grigsby*, 749 F.3d 908, 909 (10th Cir. 2014)).

"[T]his presumption of reasonableness holds true *even if* the Guideline at issue arguably contains serious flaws or otherwise lacks an empirical basis." *Id.* (internal quotations and citations omitted, emphasis in original).[5]

### A. Section 2A2.2's Lack of Adjustment for Reckless Instead of Intentional Crimes is Not Disproportionate

Sandoval argues that his sentence is disproportionate, and thus manifestly unreasonable, because § 2A2.2 does not distinguish between intentional and reckless conduct. As a broad statement, Sandoval is generally correct that a criminal defendant's mental state is often relevant when determining his punishment. But that general statement is not enough for us to conclude that the district court abused its discretion here.

First, throughout 18 U.S.C. § 113(a), statutory maximums are adjusted based on a variety of factors: the defendant's mental state, *compare* § 113(a)(3) (assault with a

---

[5] We note that when we reference this rebuttable presumption, it has no "independent legal effect." *Rita v. United States*, 551 U.S. 338, 350 (2007). Rather, it "simply recognizes the real-world circumstance that when the judge's discretionary decision accords with the Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable." *Id.* at 350–51. We note that, even after *Rita*, not all circuits use the language "presumption of reasonableness" to describe the review accorded a district court's within-Guidelines sentence. *See, e.g., United States v. Carty*, 520 F.3d 984, 993–94 (9th Cir. 2008). Based on *Rita*'s language, we agree with the Ninth Circuit that the difference "appears more linguistic than practical," as this appellate-only presumption "does not shift the burden of persuasion or proof." *Id.* Instead, when we speak of the "presumption of reasonableness" of a within-Guidelines sentence, we are only aligning with the Supreme Court's directive that "the Guidelines should be the starting point and the initial benchmark" in sentencing and not that the resulting within-Guidelines sentence is somehow shielded from scrutiny on appellate review. *Gall*, 552 U.S. at 49; *see also Grigsby*, 749 F.3d at 909.

5

dangerous weapon with intent to do bodily harm), *with* § 113(a)(6) (assault resulting in serious bodily harm), but also the means used, § 113(a)(4) (assault by striking, beating or wounding); and even the relationship of the victim to the defendant, § 113(a)(8) (assault of a spouse, intimate partner, or dating partner). Thus, although the statute and its maximum penalties do take mental state into account, other criteria also drive the relevant penalties.

Second, the Guidelines track these statutory maximums: Violations of § 113(a)(1) are punishable by a maximum of twenty years in prison and governed by Guideline § 2A2.1, applying a base offense level of 33. Violations of §§ 113(a)(2), (3), (6), and (8) are punishable by a maximum of ten years in prison; Guideline § 2A2.2, with a base offense level of 14, applies to these crimes. In contrast, §§ 113(a)(4), (5), and (7), punishable by less than 10 years in prison, are governed by Guideline § 2A2.3, with a base offense level of 7. Thus, Sandoval's argument that § 2A2.2 does not account for mental state ignores how the statute differentiates based on a defendant's mental state as well as other criteria, and how the Guidelines reflect that differentiation.

Additionally, the Sentencing Commission itself had an opportunity to consider Sandoval's argument, and presumably rejected it. Sandoval partially bases his argument on the interaction between *United States v. Zunie*, 444 F.3d 1230, 1235 (10th Cir. 2006) and § 2A2.2. *Zunie* held, as other circuits had, that a conviction for assault under 18 U.S.C. § 113(a)(6) resulting in serious bodily injury can be based on reckless as well as intentional conduct. *Id.* Sandoval argues that, considering both the conduct § 2A2.2 covers and the fact that *Zunie* was decided after § 2A2.2 was originally enacted, it was

6

manifestly unreasonable for the district court to conclude reckless assault was within the "heartland" of conduct covered by § 2A2.2. As a result, Sandoval argues, the district court should have granted his request for a downward variance.

But the Commission amended the base offense level for § 2A2.2 in 2004, as part of Amendment 663. U.S.S.G. App. C, Vol. III, at 11 (discussing Amendment 663). Although *Zunie* had not yet been decided, other circuits had held that § 113(a)(6) covered reckless conduct like that at issue here. *See Zunie*, 444 F.3d at 1235 (discussing *United States v. Ashley*, 255 F.3d 907, 911 (8th Cir. 2001) and *United States v. Loera*, 923 F.2d 725, 730 (9th Cir. 1991)). That the Amendment did not adjust § 2A2.2 to account for reckless rather than intentional conduct undermines Sandoval's argument that § 2A2.2 was not intended to cover reckless conduct.

### B. The Disparity Between Involuntary Manslaughter and Assault Resulting in Serious Bodily Injury Does Not Support Reducing Sandoval's Sentence

If Sandoval had killed one of the vehicle's occupants, he would have been prosecuted under 18 U.S.C. § 1112 and Guideline § 2A1.4(a)(2)(B) would have applied. The base offense level in that case would have been 22; Sandoval's adjusted offense level was 21. Sandoval argues that a one-level difference between severing someone's little finger and killing them is not proportional. While Sandoval's argument has some persuasive value, we are not convinced the district court abused its discretion in declining to vary from the Guidelines range on that basis.

First, as the district court observed at sentencing, it can just as easily be argued that the base offense level established by the Sentencing Commission for involuntary

manslaughter offenses involving reckless operations of a means of transportation is inadequate and should be raised. *See* ROA Vol. III at 19. Sandoval responds that, because involuntary manslaughter expressly considers "means of transportation," sentences under that provision represent the Commission's intent as regards DWI crimes. Thus, according to Sandoval, in order to consistently sentence for DWI crimes, a district court should lower sentences for DWIs arising under the aggravated assault provision, which does not have specific language to address such crimes. But Sandoval's argument is again undercut by Amendment 663. The Commission noted, in enacting Amendment 663 and lowering the base offense level of both involuntary manslaughter and aggravated assault, that it was not intending to benefit those who seriously injure their victims. U.S.S.G. App. C, Vol. III, at 12 ("To ensure that individuals who cause bodily injury to victims do not benefit from this decrease in the base offense level, the specific offense characteristics addressing degrees of bodily injury each were increased by one level.").

Second, Sandoval is not making a true one-to-one comparison: the base offense level for his crime is 14, not 21. His offense level was increased by seven because Jane Doe suffered a permanent injury. The Guidelines do not differentiate among crimes based on the severity of the permanent injury caused; the same adjusted offense level would apply if Jane Doe had lost her entire hand, or her leg, or an eye. When considering those injuries, as a policy matter, the difference in base offense levels does not appear nearly as disproportionate. Perhaps the district court could have granted a downward variance because of the nature of the permanent injury but, given that the district court found Sandoval's conduct "extremely reckless," an upward variance might have been

appropriate as well. *See United States v. Lente*, 759 F.3d 1149, 1166 (10th Cir. 2014) (affirming the district court's upward variance, in part relying on the defendant's "extremely reckless" behavior); *United States v. Pettigrew*, 468 F.3d 626, 641 (10th Cir. 2006) ("[W]e cannot say that the District Court abused its discretion in concluding that Mr. Pettigrew acted excessively recklessly or in departing upward two offense levels based on that conduct."). Thus, we cannot say the district court abused its discretion in declining to impose a lower sentence because of the nature of Jane Doe's permanent injury.

Neither of Sandoval's policy arguments establish that the district court abused its sentencing discretion. Sandoval cites multiple cases noting that the district court may, in its discretion, grant a downward variance from the Guidelines, perhaps even when only motivated by a policy disagreement with them. *See, e.g., United States v. Friedman*, 554 F.3d 1301, 1311 n.13 (10th Cir. 2009) (discussing the flexibility *Kimbrough v. United States*, 552 U.S. 85, 91 (2007) accorded district courts to adjust crack as compared to powder cocaine Guidelines). But Sandoval has not cited any case where a district court was held to have abused its discretion by sentencing within the Guidelines when it did *not* have a policy disagreement with them. To the contrary, a district court is free to "conclude in its individualized judgment that *any* given Guideline is reasonable and should be given considerable weight." *Wireman*, 849 F.3d at 964 (internal quotations omitted) (emphasis in original); *see also United States v. Morrison*, 771 F.3d 687, 693 (10th Cir. 2014) ("district courts are not obligated to vary from . . . Guidelines on policy grounds if they do not have, in fact, a policy disagreement with them.") (internal citations

9

and quotations omitted, addressing policy grounds in the context of sentencing for child pornography).

The district court carefully considered Sandoval's arguments before sentencing. We cannot conclude that the district court abused its discretion. The judgment of the district court is AFFIRMED.