PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2569
_____

UNITED STATES OF AMERICA

v.

KENNETH JAMES,
Appellant
_____

On Appeal from the District Court of the
Virgin Islands
(D.C. No. 3-17-cr-0040-001)
District Judge:  Hon. Curtis V. Gomez
_____

Argued
April 9, 2019

Before:   SMITH, *Chief Judge*, JORDAN and RENDELL,
*Circuit Judges*.

(Filed: June 27, 2019)
_____

Joseph A. DiRuzzo, III
Daniel Lader   [ARGUED]
DiRuzzo & Company
401 East Las Olas Boulevard
Suite 1400
Ft. Lauderdale, FL 33301
	*Counsel for Appellant*

Melissa Ortiz
Office of United States Attorney
1108 King Street
Suite 201
Christiansted, VI  00820

Sigrid M. Tejo-Sprotte   [ARGUED]
Office of United States Attorney
5500 Veterans Drive
Suite 260
United States Courthouse
St. Thomas, VI   00802
	*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Kenneth James appeals the denial of his motion to withdraw his guilty plea.  He argues that the District Court of the Virgin Islands erred as a matter of law and abused its discretion in declining to grant the motion.  We disagree and will affirm.

## I.  BACKGROUND

James arranged to sell cocaine to someone who turned out to be a confidential informant of the Drug Enforcement Agency ("DEA").  After several phone calls and conversations between James and the informant, James brought a bag containing 12 kilograms of cocaine to a hotel room where the informant was staying.  James proceeded to negotiate a per-kilo price with the informant, settling on $13,500, and sold him the contents of the bag.  DEA agents immediately arrived on the scene, seized the bag containing the cocaine, and arrested James.  As far as criminal records show, that was his first encounter with the justice system.

The government filed a two-count information charging James in Count I with conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846, and in Count II with possession with intent to distribute narcotics, in violation of 21 U.S.C. § 841(a)(1).  He initially pled not guilty.  Four months later, however, he made a motion to change his plea.  Pursuant to a plea agreement, he sought to plead guilty to Count I, which specifically charged a "conspir[acy] to possess with intent to distribute more than five kilograms of cocaine[.]" (App. at 34.)

The District Court convened a change-of-plea hearing and asked James about his education level.  He responded that he had completed the third grade and that he could read and write in English.  The Court confirmed that James had an opportunity to have the documents associated with the change of plea explained to him and that he was satisfied with the representation provided by his attorney, David Cattie.  The

Court then confirmed that no one had made any promises or threats to prompt James to change his plea and that he was doing so of his own free will. The Court also explained the charges and the possible penalties for the offenses, as well as James's right to a trial and the rights he would have if he went to trial. At each step, James said he understood.

The Court next noted that, as part of the plea agreement, James was "agree[ing] to waive [his] right to appeal any sentence imposed by the Court up to the statutory maximum on any ground whatever … [and his] right to petition [for post-conviction relief] under Title 28 US Code Section 2255, with the exception of a claim of ineffective assistance of counsel[.]" (App. at 59.) James again said he understood.

To establish the factual foundation for the guilty plea, the Court asked the government to recite what it would prove if the case were to proceed to trial. The Assistant United States Attorney stated that

> the defendant, Kenneth James, arranged with individuals unknown, to provide approximately 12 kilograms of cocaine to a DEA confidential source. After several phone calls and conversations between Kenneth James and the confidential source, Kenneth James arrived at the hotel where the confidential source was staying, entered the room carrying a bag that contained approximately 12 kilograms of cocaine, which Kenneth James then proceeded to sell to the confidential source. Kenneth James negotiated to sell each kilo of cocaine to

4

the confidential source for $13,500. After Kenneth James entered the hotel room, and the confidential source verified the cocaine was indeed in the bag, DEA agents arrived on scene and recovered the bag containing the 12 bricks of cocaine.

(App. at 60-61.) James agreed that the government's statement of facts was "true and accurate," and he entered a plea of guilty, which the Court accepted. (App. at 63.)

Several months later, but before he was sentenced, James filed a *pro se* motion captioned "motion to dismiss counsel based upon ineffectiveness of counsel[.]" (App. at 49.) In it, he asserted his innocence and provided three reasons to explain why he had pled guilty to a crime he was now saying he did not commit. First, he said that he was placed "under Duress to force [him] to take a plea of something[] that was never investigated in [his] favor." (App. at 49.) He claimed that Cattie "forced [him] to tell [federal agents] that [he was] responsib[le] for a bag [of cocaine] that [wasn't his.]" (App. at 50.) According to James, he pled guilty out of fear because "Cattie told [him] that … the [j]udge and [j]ury would not believe [him] … because the [j]udge supports corruption[.]"[1] (App. at 49-50.) Second,

_____

[1] More particularly, James asserted that Cattie made several misrepresentations regarding the District Court, including telling James "that [he] need[ed] to take a plea because [the Judge] … 'supports corruption'"; that "the Judge system in St. Thomas 'support corruption' and the people in these high positions are 'racist'"; and "that one of the reasons why the Judge and Jury wouldn't believe [him] is because the

James stated that Cattie "never took the time to explain [to him] in detail about the plea agreement" and that he did not understand the plea agreement because his "educational level is very poor[,] to the point that [he] can't read or comprehend to a level where [he could] trust [Cattie.]" (App. at 49.) Finally, James claimed that no investigation had been made to absolve him because Cattie had "already proven [him] guilty before any investigation deeply into this case." (App. at 49.)

Given James's allegations, Cattie filed a motion to withdraw as his attorney, which was granted. Joseph DiRuzzo was then appointed to represent James and promptly moved to withdraw the guilty plea. In that motion, for the first time, James argued that "he was … entrapped by [a] confidential informant." (App. at 67.)

The District Court denied the withdrawal motion, concluding that "James failed to meaningfully assert his innocence or provide an adequate reason to withdraw his guilty plea[.]" (App. at 14.) The Court also stated that "[a]ssertions of mere legal innocence [are] insufficient to justify the withdrawal of a guilty plea; proof of *factual* innocence is required." (App. at 8 (second alteration in original) (quoting *United States v. Monac*, 120 F. App'x 924, 927 (3d Cir. 2005)) (internal quotation marks omitted).) Thus, the District Court ruled that James could not withdraw his guilty plea because "an entrapment defense is a claim of

---

Judge supports corruption." (App. at 49-50.) James also stated that Cattie told him that he "h[ad] to sign the plea because [the new prosecutor on St. Thomas] wouldn't give [him] a [second] chance." (App. at 49.)

6

legal innocence, not factual innocence[,]" (App. at 9,) and James had failed to assert his factual innocence. The Court went on, however, to note that, "even if James's assertion of legal innocence were sufficient, '[b]ald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea[,]'" and "James ha[d] not provided the Court with any details on how he was entrapped[.]" (App. at 10 (first alteration in original).)

James was sentenced to 78 months' imprisonment, to be followed by five years of supervised release, with four hundred hours of community service, and a special assessment of $100. He timely appealed.

## II.    DISCUSSION[2]

### A.    The Appellate Waiver

As already noted, James's plea agreement included a waiver of appellate rights. Because a valid waiver ordinarily prevents us from reaching the merits of an appeal, "we review the validity of the waiver provision and plea agreement first." *United States v. Wilson*, 429 F.3d 455, 457 (3d Cir. 2005).

A defendant is free to waive his statutory right to appeal. *United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001). Such a waiver does not deprive us of subject matter jurisdiction, but, when the waiver is valid, "we will not exercise that jurisdiction to review the merits of [the

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231 and 48 U.S.C. § 1612. We have jurisdiction pursuant to 28 U.S.C. § 1291.

7

defendant's appeal]." *United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir. 2007). Typically, instead of dismissing the appeal, "we affirm[] the judgment of the district court." *Id.* at 202. The government contends that we should do so here. This, however, is not the typical case. Here, "the defendant knowingly waive[d] the right to appeal any sentence" (App. at 39), but the waiver – crafted by the government – does not state that the defendant knowingly waived the right to appeal his conviction. "[W]aivers of appeals should be strictly construed." *Khattak*, 273 F.3d at 562. Thus, the waiver at issue, according to its terms, does not bar James's appeal, *see United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001) (per curiam) (noting that a waiver that only applies to an appeal of the defendant's "sentence" does not bar an appeal of a denial of a motion to withdraw a guilty plea), and we proceed to the merits.

### B. James's Request to Withdraw His Guilty Plea

"Once accepted, a guilty plea may not automatically be withdrawn at the defendant's whim." *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001). Instead, a defendant may withdraw a plea of guilty before sentencing if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). To determine if there has been such a showing, "[a] district court must consider three factors … (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). The burden of demonstrating those factors "is substantial" and "falls on the defendant[.]" *Id.* Whether to

8

grant a motion to withdraw a guilty plea lies within the discretion of the district court. *Id.* We will not disturb that exercise of discretion unless "no reasonable person would adopt the district court's view." *United States v. Steiner*, 847 F.3d 103, 110 (3d Cir. 2017) (citation omitted).

James challenges on two bases the District Court's decision to deny his motion to withdraw his guilty plea. First, he says the Court erred in declaring that a claim of legal innocence is never sufficient to support withdrawal of a guilty plea. As James sees it, an entrapment defense, while not involving factual innocence, can still be a sufficient basis for withdrawal. Second, he says that the District Court abused its discretion in weighing the withdrawal factors. We address each argument in turn.

1. *James's Claims of Innocence*

      a) <u>Legal innocence can support a claim of innocence.</u>

Looking first at James's argument that the District Court erred in determining that entrapment can never be a sufficient claim of innocence to support withdrawal, he is quite right. Legal innocence alone can support withdrawal of a guilty plea. As we stated in *United States v. Jones*, the relevant inquiry is "whether the defendant asserts his innocence[.]" 336 F.3d at 252. Innocence has a broader meaning than factual innocence. It denotes being "[f]ree from guilt; free from legal fault[,]" which, by definition, encompasses being legally excused from any culpability. *See Innocent*, Black's Law Dictionary 804 (10th ed. 2014)

9

(defining the term). In short, legal innocence counts as innocence.

Eight of our sister circuits have held that a claim of legal innocence can support the withdrawal of a guilty plea.[3] Only one, the Fifth Circuit, has taken a contrary view.[4] The Advisory Committee's notes to the 1983 amendments to the Federal Rules of Criminal Procedure likewise support the view that legal innocence can sustain a guilty plea withdrawal. When the Rules were amended to require that the defendant provide a fair and just reason for withdrawal, the Advisory Committee said that "[w]hether the movant has asserted his legal innocence is an important factor to be weighed[.]" Fed. R. Crim. P. 32 Advisory Committee note to

---

[3] *United States v. Barlow*, 811 F.3d 133, 135 n.1 (4th Cir. 2015); *United States v. Maxwell*, 498 F.3d 799, 801 (8th Cir. 2007); *United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007); *United States v. Negron-Narvaez*, 403 F.3d 33, 36 (1st Cir. 2005); *United States v. Rosen,* 409 F.3d 535, 546 (2d Cir. 2005); *United States v. Ortega-Ascanio,* 376 F.3d 879, 883-84, 887 (9th Cir. 2004); *United States v. Cray*, 47 F.3d 1203, 1206, 1209 (D.C. Cir. 1995); *United States v. Groll*, 992 F.2d 755, 758 (7th Cir. 1993).

[4] *See United States v. Lord*, 915 F.3d 1009, 1014 (5th Cir. 2019) (finding that because defendant's "arguments do not go to their factual innocence" and instead "amount to an assertion of their legal innocence," they are an insufficient ground to withdraw a plea); *see also id.* ("an assertion of innocence [i]s not supported by claims of 'legal innocence based on insanity and entrapment'" (citing *United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009))).

1983 amendments. Thus, the weight of authority clearly supports treating a claim of legal innocence as an adequate assertion of innocence.

So, in our view, does sound logic. It is axiomatic that a defendant who has a complete affirmative defense, such as self-defense or entrapment, is not legally culpable. *See, e.g.*, *United States v. Scott*, 437 U.S. 82, 98 (1978) (stating that a finding of entrapment "necessarily establish[es] the criminal defendant's lack of criminal culpability" (citation omitted); *New Orleans & N.E.R. Co. v. Jopes*, 142 U.S. 18, 24 (1891) ("If the injury was done by the defendant in justifiable self-defense, he can n[ot] be punished criminally … . Because the act was lawful, he is wholly relieved from responsibility for its consequences."). Likewise, a juvenile may be shielded from criminal liability because of his status as a juvenile. *See* 21 U.S.C. § 861(a) (making it unlawful only "for any person at least eighteen years of age to knowingly and intentionally -- employ … a person under eighteen years of age" in drug operations); *see also, e.g.*, Wash. Rev. Code § 9A.04.050 ("Children under the age of eight years are incapable of committing crime."). If a defendant is not legally culpable, it stands to reason that he should be able to withdraw his guilty plea before sentencing because he is exempt from any punishment for the alleged acts constituting the crime, regardless of whether he committed them.

Despite that, the District Court relied on our decision in *United States v. Brown*, 250 F.3d at 818, to conclude that a claim of legal innocence is insufficient to permit a defendant

11

to withdraw his guilty plea.[5]  More particularly, it relied on *Brown*'s statement that, "[i]n assessing a defendant's claim of 'legal innocence' for purposes of withdrawal of a guilty plea, [courts] must first examine whether the defendant has asserted his or her factual innocence."  *Id.*  In *Brown*, we placed "legal innocence" in quotes because we were repeating a characterization by the defendant of a position she had advanced.  *Id.* at 814, 818.  The defendant asserted that she was "legally innocent" because, without certain evidence, the government would be unable to prove its case against her beyond a reasonable doubt.  *Id*. at 818.  But she did not present any evidence to support the contention that she was innocent in fact.  *Id.*  Thus, *Brown* did not truly address an assertion of innocence – either legal or factual – but rather an assertion that there was insufficient evidence to convict.[6]  That is an entirely different argument and is certainly not a

---

[5]  The Court also cited *United States v. Monac*, 120 F. App'x at 927, and *United States v. Kenley*, 299 F. App'x 184, 186 (3d Cir. 2008).  It is contrary to our Internal Operating Procedures, however, to treat non-precedential opinions as having any precedential effect.  *See* Third Circuit Internal Operating Procedure 5.7 (indicating that non-precedential "opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing").

[6]  We acknowledge that the Tenth Circuit considered *Brown* as supporting the idea that factual innocence is required, while reaching the opposite conclusion as a Circuit.  *Hamilton*, 510 F.3d at 1214-15.  We are clarifying the import of *Brown* now.

claim of legal innocence.  There is a world of difference between saying, on the one hand, "I did it, but the law says I'm not culpable," and, on the other, "I may have done it, but you can't prove it."

A defense of entrapment is of the former variety and can be a proper basis for the withdrawal of a guilty plea.  It speaks directly to the legal culpability of the defendant. *United States v. Russell*, 411 U.S. 423, 435 (1973).  Not surprisingly, then, several courts of appeals have treated a well-founded entrapment defense as a sufficient claim of innocence. *See, e.g.*, *United States v. Berkeley*, 567 F.3d 703, 708 n.2 (D.C. Cir. 2009) ("[A]n entrapment defense may form the basis for a viable claim of innocence[.]"); *United States v. Groll*, 992 F.2d 755, 759 n.5 (7th Cir. 1993) ("A defendant raising an entrapment defense to withdraw her guilty plea can, given the nature of the defense, admit to the conduct supporting the alleged offense and yet still claim that she is legally innocent of the crime."); *see also United States v. Chant*, 201 F.3d 445, 1999 WL 1021460, at \*3 (9th Cir. 1999) (table) (referring to an entrapment defense as "[a] claim of innocence, supported by evidence not available at the time of the entry of the plea, [which] might be a fair and just reason for allowing withdrawal of a guilty plea").

To say that an entrapment defense can support withdrawal, however, "is not to say … that the mere assertion of a legally cognizable defense is always a sufficient condition for securing withdrawal of a plea." *United States v. Barker*, 514 F.2d 208, 221 (D.C. Cir. 1975).  On the contrary, "[b]ald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea." *Jones*, 336 F.3d at

252. Instead, "[a]ssertions of innocence must be buttressed by facts in the record that support a claimed defense." *Brown*, 250 F.3d at 818 (citation omitted). In other words, "the mere assertion of a legal defense is insufficient; the defendant must present a *credible* claim of legal innocence." *Hamilton*, 510 F.3d at 1214; *see also United States v. Thompson-Riviere*, 561 F.3d 345, 353 (4th Cir. 2009) (noting that the defendant's burden "is to credibly assert his legal innocence: that is, to present evidence that (1) has the 'quality or power of inspiring belief,' and (2) tends to 'defeat the elements in the government's *prima facie* case' or to 'make out a successful affirmative defense'" (citations omitted)).

Here, the District Court held that it was dealing with just such an unsupported claim. It said that, "even if James's assertion of legal innocence[, entrapment,] were sufficient, … . James ha[d] not provided the Court with any details on how he was entrapped, let alone pointed to any evidence of the alleged entrapment." (App. at 10.) That is an adequate foundation on which to conclude that James's claim of legal innocence was insufficient to be a ground for withdrawal of his guilty plea, making the District Court's earlier legal error harmless.

> b) James's claims of innocence are insufficient.

James disputes that the District Court's conclusion in that regard and says the Court abused its discretion in denying his withdrawal motion since he "plausibly claimed his innocence (both factual and legal) and … proffered legitimate reasons explaining why he first pled guilty and then made the

request to withdraw it." (Opening Br. at 5.) We have a very different understanding of the record and his arguments.

James's claim of entrapment was a "[b]ald assertion[] of innocence" that was not "buttressed by facts in the record that support [his] claimed defense." *Jones*, 336 F.3d at 252 (citation omitted). The defense of entrapment requires proof of two elements: "[1] government inducement of the crime, and [2] a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Matthews v. United States*, 485 U.S. 58, 63 (1988). James argues that he sufficiently alleged inducement because of "the involvement of the confidential informant" and that he showed a lack of predisposition because of his "complete lack of any criminal history[.]" (Opening Br. at 11.) It is a stretch to read his filings in the District Court as alleging both elements, but we will assume for the sake of discussion that he did. The question, then, is whether he provided any evidentiary support.

James says that he showed inducement because it was the informant who put together the drug deal, despite James's "repeated and consistent claims that he did not want to be involved[.]" (Opening Br. at 16.) As evidence of reluctance, he cites to the plea colloquy, which notes that "several phone calls and conversations [occurred] between Kenneth James and the confidential source[.]" (App. at 60.) That's the entirety of his proof, beyond his self-serving statements. But the fact that several calls took place does not prove that those calls were needed to overcome any reluctance on James's part. And, as we explained in *United States v. Wright*, "mere solicitation by the government, without more, is not 'inducement.'" 921 F.2d 42, 45 (3d Cir. 1990). To be

15

inducement, the government's actions must have overpowered the defendant. *Cf. Groll*, 992 F.2d at 759 (noting that "three phone calls urging a defendant to buy cocaine after an initial refusal were not sufficient inducement" but that an informant calling a defendant every day for a month raised a colorable claim). At most, James has provided evidence that repeated calls were made. The content of those calls is simply not in evidence. The District Court thus did not abuse its discretion in concluding that James had not given sufficient support for a defense of entrapment. *See, e.g.*, *United States v. Hanson*, 339 F.3d 983, 988 (D.C. Cir. 2003) (rejecting an "extremely weak[,]" though not completely unviable, entrapment defense as a basis for asserting innocence).

Since James did not provide a meaningful basis to conclude that the government induced him to commit the crime to which he pled guilty, it does not matter whether he showed a lack of predisposition to commit the crime. The District Court was within its discretion in rejecting his entrapment defense as a basis for withdrawing his plea.

James also takes a pass at what one might interpret as a claim of factual innocence. He contends that he could not have had the requisite "intent" to distribute narcotics because the bag containing the drugs was not his and "he did not know what was in the bag[] of drugs until he was arrested[.]" (Opening Br. at 5.) But, in all of this it must be remembered that James admitted under oath to the underlying facts of the offense during the plea colloquy and made no mention of

16

inducement then.[7] His factual admissions "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Thus, given his earlier admissions, including that he negotiated the price for the cocaine on a per-kilo basis, there was no abuse of discretion in rejecting his late and lame protestations of factual innocence, if he actually presented them to the District Court.

2.    *Weighing the Remaining Withdrawal Factors*

The second factor in assessing whether a guilty plea can be withdrawn is whether the defendant has proffered "sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial." *Jones*, 336 F.3d at 253 (citation omitted). James gives three reasons why he should have been allowed to withdraw his plea. First, he says the plea was not voluntary since "he felt threatened under duress to accept a plea that he would not have accepted[.]" (Opening Br. at 8.) Second, he claims the plea was not entered into knowingly, that it was not an "intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." (Opening Br. at 6 (quoting *Brady v. United*

---

[7] During the plea colloquy, James agreed that the government could prove certain facts beyond a reasonable doubt, including that "James[] arranged with individuals unknown, to provide approximately 12 kilograms of cocaine to a DEA confidential source" and that "James negotiated to sell each kilo of cocaine to the confidential source for $13,500." (App. at 60-61.)

17

*States*, 397 U.S. 742, 748 (1970)).)  Third, he claims that his counsel was ineffective.  The record does not support any of those assertions.

As to his first argument, that he was under duress "because his attorney told him that the judge system in St. Thomas is corrupt and the judge and jury would not believe his defense[]" (Opening Br. at 8), James has offered absolutely no evidence of corruption, nor any rational reason why he would have believed such a tale, even if it were told.  In fact, as the District Court stated, "it seems that a reasonable defendant, believing he faced sentencing at the hands of a corrupt and biased judge, would be hesitant to forgo the protections afforded by a jury trial."  (App at 13.)

The record is not simply bereft of anything supporting James's assertions about what Cattie said; it is plainly contrary to those assertions.  As in *Jones*, where the defendant later contended his counsel made a promise that induced him to plead guilty, the District Court here "engaged [James] in a lengthy and extensive colloquy … during which the Court asked [him] whether anyone had made any threat or promise or assurance of any kind to convince him to plead guilty.  He replied in the negative."  336 F.3d at 254.  Indeed, James affirmed that he was "entering th[e] plea of [his] own free will."  (App. at 58.)  Having pointed to nothing that undermines those statements, James cannot credibly argue that the District Court abused its discretion in concluding that his late-breaking and unsupported assertion of duress did not favor granting the motion for withdrawal.[8]  *Cf. United States*

---

[8]  Nonetheless, James contends that, "[i]n prior decisions, this Court has considered the accused's familiarity

*v. Fazio*, 795 F.3d 421, 426 (3d Cir. 2015) (noting that such statements at a plea colloquy mean that an "appellate waiver must … be enforced unless we identify the unusual circumstance of an error amounting to a miscarriage of justice" (citation omitted)).

James next argues that his plea was not a knowing, "intelligent choice among the alternative courses of action open to the defendant." *Jones*, 336 F.3d at 253 (citation omitted). He advances two reasons. First, he makes the bootstrap argument that, if it is true that the system in St. Thomas is not corrupt, then "James made his plea without sufficient awareness of the fair and impartial process he would receive presenting his defense[.]" (Opening Br. at 8.) Second, he says that, because of his "lack of education" he was unable to make an informed decision about the alternative courses of action available to him. (Opening Br. at 8.)

Both of those arguments fail because James's statements during the change-of-plea hearing indicate that his plea was indeed knowing, voluntary, and fully informed. As

---

with the justice system in determining whether a plea was made voluntarily[.]" (Opening Br. at 8 (citing *Jones*, 336 F.3d at 254-55).) Since this was James's "first touch with the judicial system[,]" (App. at 88,) he argues we should find his plea involuntary, given the claims he has asserted. But simply because we consider the accused's familiarity with the criminal justice system does not make that consideration dispositive.

19

the District Court observed, any allegation that James's plea was not entered into knowingly and voluntarily is "flatly contradicted by [his] statements at the plea colloquy that he 'read[s] and write[s] in English' and had 'had an opportunity to have the documents in this case explained to [him]'" (App. at 14 (alterations in original) (citation omitted),) and by his affirmative responses when asked if he was competent, if the plea agreement had been explained to him, and if he had had a full opportunity to make an informed decision. As to James's level of education, the District Court, being the appropriate finder of fact, determined that James's pro se motion was presented "coherently[.]" (App. at 14.) Thus, the District Court could fairly conclude that James had the requisite understanding and information to enter a guilty plea and that he did so knowingly and voluntarily.

Finally, James contends that his counsel was ineffective. He attempts to bolster that assertion by pointing out that he requested new counsel. A valid claim of ineffective assistance of counsel can negate the intelligent and voluntary nature of a guilty plea and provide a basis for withdrawing it. *Hill v. Lockhart*, 474 U.S. 52, 56-58 (1985). But the "'narrow exception to the rule that defendants cannot attack the efficacy of their counsel on direct appeal' [only] exists '[w]here the record is sufficient to allow determination of ineffective assistance of counsel.'" *Jones*, 336 F.3d at 254 (second alteration in original) (citation omitted). A "court will permit a defendant to withdraw a guilty plea based on ineffective assistance of counsel only if (1) the defendant shows that his attorney's advice was under all the circumstances unreasonable under prevailing professional norms; and (2) the defendant shows that he suffered

20

'sufficient prejudice' from his counsel's errors." *Id.* at 253-54 (citations omitted). James has not supported either prong.

As to the first, James again relies on his self-serving and uncorroborated claims that Cattie told him that Judge Gomez is corrupt; that Cattie "never took the time to explain [to him] in detail about the plea agreement[;]" and that Cattie did not investigate his case. (Opening Br. at 3.) His mere assertions are not enough. *See Jones*, 336 F.3d at 255 ("Jones has not pointed to any specific act or omission or objective evidence to support his blanket contentions."). "Significantly, during the plea colloquy, James averred that … he was 'satisfied with the representation [he had] received from [Attorney Cattie].'" (App. at 12 (second and third alterations in original) (citation omitted).) That alone, given the rest of this record, is a sufficient ground to disallow a charge of ineffective assistance of counsel as a basis for withdrawal of the guilty plea. *See United States v. Erwin*, 765 F.3d 219, 226 (3d Cir. 2014) (enforcing a waiver based on a defendant's responses during plea colloquy). Moreover, in Cattie's motion to withdraw as counsel, he represented that he had met with James on multiple occasions, discussed the plea agreement, investigated the claims against James, and never maligned the Court. The District Court could properly decide on this record, without abusing its discretion, that that version of events was more likely the accurate one.

James has also failed to establish the prejudice prong. A defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668,

694 (1984). James has not provided any reason, yet again aside from his own self-serving statements, to believe that Cattie's alleged conduct caused him to forgo a jury trial and admit guilt.

Because neither James's assertions of innocence nor any of his other reasons for withdrawal favored granting his motion, the District Court was not required to evaluate the prejudice to the government. *See Jones*, 336 F.3d at 255 ("[T]he Government need not show such prejudice when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea."). Having reasonably determined that the relevant legal factors did not favor James's motion to withdraw his guilty plea, the District Court was within its discretion to deny the motion.

## III. CONCLUSION

For the foregoing reasons, we will affirm the order of the District Court.