**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 23-3270

———————

UNITED STATES OF AMERICA

v.

MEHDI NIKPARVAR-FARD,
a/k/a MEHDI ARMANI,
                                                        Appellant

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:18-cr-00101-001)
District Judge:  Honorable Gene E.K. Pratter

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 13, 2025

———————

Before:  PHIPPS, FREEMAN, and CHUNG, *Circuit Judges*

(Filed: February 12, 2025)

———————

OPINION[*]

———————

PHIPPS, *Circuit Judge*.

        A federal grand jury indicted a medical doctor who owned and operated four

Philadelphia-area urgent care facilities on five counts related to the illegal distribution of

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

opioids. In return for a lower sentencing range, the doctor pleaded guilty to one of the counts: conspiracy to distribute a controlled substance. One of the doctor's employees, a physician assistant, was also indicted on four of those five counts, including conspiracy. Unlike the doctor, the physician assistant did not plead guilty; instead, he went to trial and was not convicted of any of the charges against him. After his alleged co-conspirator's trial ended without a conviction, the doctor changed his mind about his prior guilty plea, and he twice moved to withdraw it. The District Court denied those motions and imposed a prison sentence within the range specified in the plea agreement. The doctor now appeals the denial of his second withdrawal-of-plea motion. On abuse-of-discretion review, we will affirm that ruling.

## FACTUAL BACKGROUND

Between January 2014 and August 2017, Dr. Mehdi Nikparvar-Fard owned and operated eight urgent care facilities, four of which were in the Philadelphia area. Each facility was identified by the prefix 'AUC,' an abbreviation for 'Advanced Urgent Care,' followed by a location, such as 'AUC – City Avenue' or 'AUC – Montgomeryville.' After a federal investigation of several of his urgent care facilities, a grand jury indicted Nikparvar-Fard on March 14, 2018, for one count of conspiracy to unlawfully distribute oxycodone. He was then taken into custody, where he remained for over 42 months before being released in July 2022 on a $100,000 cash bond.

On January 9, 2019, while Nikparvar-Fard was detained, a grand jury returned a superseding indictment. It charged him with five counts related to the illegal distribution of opioids: four counts of maintaining drug-involved premises – one count for each of AUC's Philadelphia-area locations, *see* 21 U.S.C. § 856(a)(1) – and one count of conspiracy to unlawfully distribute oxycodone, *see id.* § 841(a)(1), (b)(1)(C); *id.* § 846.

2

That superseding indictment also charged twelve employees of AUC facilities – seven physicians, four physician assistants, and the office manager – with between one and four counts of maintaining a drug-involved premises.  One of the physician assistants, Mitchell White, was charged with three counts of maintaining a drug-involved premises, *see* 21 U.S.C. § 856(a)(1), as well as the conspiracy count, *see id.* § 841(a)(1), (b)(1)(C); *id.* § 846.

As the case proceeded, the Government dismissed charges against six of the defendants, and five defendants pleaded guilty to the charges against them.  Even still, up until three days before the scheduled trial date of January 9, 2023, two defendants – Nikparvar-Fard and White – had not been dismissed and had not pleaded guilty.

On January 6, 2023, however, Nikparvar-Fard came to court to plead guilty to the conspiracy charge.  He had previously entered into a plea agreement with the Government under which the Government agreed to dismiss the remaining four charges.  In addition, the sentencing range in the plea agreement – 43 to 108 months' imprisonment – was less than the applicable range under the United States Sentencing Guidelines of 121 to 151 months.  *See* U.S. Sent'g Guidelines Manual ch. 5 pt. A (U.S. Sent'g Comm'n 2023) (setting forth a 121 to 151 month sentence for a total offense level of 31 and criminal history category of II).  The parties further agreed to present the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) so that if the District Court accepted the plea, it would be bound by that reduced sentencing range.

The District Court accepted that plea and the reduced sentencing range that came with it.  Before it did so, the District Court made several inquiries to ensure that a factual basis existed for Nikparvar-Fard's guilty plea, *see* Fed. R. Crim. P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for

3

the plea."), and that the plea was voluntary, knowing, and intelligent, *see Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970))). With respect to the factual basis for Nikparvar-Fard's guilty plea, the Government explained that the conspiracy charge was based on his practice, at various times between May 2014 and July 2015, of giving a pre-signed prescription pad to another physician who did not have a license to write prescriptions and that such a practice was "outside the usual course of professional practice and not for a legitimate medical purpose." Change-of-Plea Hr'g Tr. 41:22–23 (App. 163). Nikparvar-Fard fully admitted those facts. Through a series of questions, which Nikparvar-Fard answered under oath, the District Court ensured that he was not making a haphazard or half-hearted admission: it confirmed that he had sufficient time and opportunity to discuss his case with counsel, that he was satisfied with their representation and advice, and that no one had made "any threats or any promises or assurances to [him] of any kind other than what is set forth in the Plea Agreement" to induce his plea. *Id.* at 31:23–32:1 (App. 152–53).

The next week, the lone remaining defendant, White, proceeded to trial on the four counts against him. The trial ended with a mistrial on the conspiracy-to-distribute charge and acquittals on the three counts of maintaining a drug-involved premises.

Two days later, Nikparvar-Fard filed a *pro se* motion to withdraw his guilty plea. Contrary to his testimony during the plea colloquy, Nikparvar-Fard asserted that his counsel had threatened him: if he did not either plead guilty or satisfy counsel's demand for an additional payment of $190,000 for trial, then his counsel would stop representing

4

him.  After the filing of that motion, Nikparvar-Fard's counsel moved to withdraw from representing him.   The District Court granted counsel's motion to withdraw from representation, denied without prejudice Nikparvar-Fard's motion to withdraw the guilty plea, and appointed new counsel.

Through his appointed counsel, Nikparvar-Fard again moved to withdraw his guilty plea.  There, he argued that he was under duress when he pleaded guilty due to his prior counsel's pre-trial fee demand.  In addition, he claimed that his prior counsel provided ineffective assistance because they were critical of his desire to prove that he did not act with criminal intent when he gave the unlicensed doctor pre-signed pads to write prescriptions for opioids.  *Cf. generally Ruan v. United States*, 597 U.S. 450, 454 (2022) (holding that a conviction under 21 U.S.C. § 841 for dispensing controlled substances not as authorized requires a knowing or intentional mental state).

To resolve Nikparvar-Fard's renewed motion to withdraw his guilty plea, the District Court held an evidentiary hearing.  Only Nikparvar-Fard testified, and he did not persuade the District Court.  As the District Court explained, his statements contradicted his prior testimony, and he did not explain or otherwise justify the contradiction.

After his motion was denied and he was sentenced to a 107-month prison term, Nikparvar-Fard invoked this Court's appellate jurisdiction through a timely notice of appeal.  *See* 28 U.S.C. § 1291.

### DISCUSSION

By rule, there must be "a fair and just reason" for the withdrawal of a guilty plea before sentencing.  Fed. R. Crim. P. 11(d)(2)(B); *see also United States v. Rivera*, 62 F.4th 778, 788 (3d Cir. 2023); *United States v. James*, 928 F.3d 247, 253 (3d Cir. 2019).  Three factors have been used to determine whether a plea withdrawal request meets that standard:

(i) an assertion of innocence by the defendant; (ii) the strength of the rationale for the requested plea withdrawal; and (iii) prejudice to the Government resulting from the withdrawal. *See United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005); *United States v. Martinez*, 785 F.2d 111, 114 (3d Cir. 1986). When the first two factors do not support withdrawal, there is no need to consider whether the Government would be prejudiced by the plea withdrawal. *See United States v. Harris*, 44 F.3d 1206, 1210 (3d Cir. 1995).

## A. Assertion of Innocence

Nikparvar-Fard attempts to meet the innocence prong by arguing that he did not have the requisite criminal intent to enter a drug conspiracy. *See United States v. Williams*, 974 F.3d 320, 367–68 (3d Cir. 2020) (explaining that it is sufficient for purposes of 21 U.S.C. § 846 that "knowing or intentional distribution or possession occurred"). Specifically, he contends that he had a reasonable belief that allowing an unlicensed doctor to fill out opioid prescriptions on a pre-signed pad was consistent with the practice of interval dispensing. The problem is that Nikparvar-Fard admitted during the plea colloquy that those pre-signed prescription pads served no legitimate medical purpose. And without additional evidence to support his innocence, it was not an abuse of discretion to reject his later profession of innocence that contradicts his prior sworn statements. *See United States v. Jones*, 336 F.3d 245, 253 (3d Cir. 2003). Thus, Nikparvar-Fard has not carried his burden with respect to this factor.

## B. Strength of Rationale for Withdrawal

Nikparvar-Fard provides two reasons for withdrawing his plea. Neither is persuasive.

First, he blames his guilty plea on bad advice from his counsel. *See generally Strickland v. Washington*, 466 U.S. 668, 687 (1984) (setting forth the two elements of a

6

claim of ineffective assistance of counsel: deficient performance and resulting prejudice). He claims that when he proposed introducing several medical treatises to demonstrate his non-culpable mental state with respect to the use of pre-signed prescription pads, his counsel opined that "much" of that evidence would be inadmissible. Mot. Hr'g Tr. at 35:9–10 (App. 800). It is hard to see how that assessment constitutes deficient performance "under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 539 U.S. at 688). Thus, it was not an abuse of discretion for the District Court to conclude that Nikparvar-Fard failed to demonstrate that counsel's advice was unreasonable. *See id.*

The other rationale for withdrawal that Nikparvar-Fard develops is the threat-from-counsel claim. He argues that he was forced to plead guilty because, three days before trial, his counsel demanded payment of $190,000. But by its own terms, the email exchange between the two of them concerned a payment dispute: counsel stated that Nikparvar-Fard agreed to payment in full before trial and that the balance was $190,000, and Nikparvar-Fard refused to immediately pay the outstanding balance. As part of that correspondence, counsel mentioned the possibility of filing a motion to withdraw from representing Nikparvar-Fard, but even that email made clear that "it [would] be up to the court" to decide whether to grant the motion. E-mail from Frank DeSimone to Mehdi Nikparvar-Fard (Jan. 5, 2023, 6:26 p.m.) (App. 242). That statement is not a threat, but even if it were, Nikparvar-Fard did not perceive it as such because in response to a direct question by the District Court, he denied receiving any threats that induced him to plead guilty. Under these circumstances, therefore, the District Court did not abuse its discretion in rejecting the presence of a threat from counsel as a basis for allowing Nikparvar-Fard to withdraw his prior guilty plea.

## CONCLUSION

Because the District Court did not abuse its discretion in finding that Nikparvar-Fard did not satisfy either of the first two factors for a motion to withdraw his guilty plea, we will affirm its judgment without considering the third factor, prejudice to the Government.