**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 23-3258 & 26-1120

_____


UNITED STATES OF AMERICA,

v.

ERIC HAFNER,

Appellant

_____


Appeal from the United States District Court
for the District of New Jersey
(District Court No. 3:19-cr-00790-001)
District Judge: Honorable Zahid N. Quraishi

_____

Submitted under Third Circuit L.A.R. 34.1(a)
March 28, 2025


Before: BIBAS, PHIPPS, and AMBRO, Circuit Judges


(Opinion filed: February 27, 2026)

OPINION[*]

AMBRO, *Circuit Judge*

After pleading guilty to three charges based on repeated threats to Government officials and private citizens, Eric Hafner desired a mulligan and sought to withdraw his plea. However, the District Court denied this request and imposed a sentence in excess of the advisory range it calculated under the United States Sentencing Guidelines (the "Guidelines"). Now, Hafner challenges the District Court's denial of his motion to withdraw the guilty plea as well as the sentence it imposed.

## I. Background

In October 2019, a federal grand jury indicted Hafner for threatening elected officials, judges, police officers, attorneys, and other private citizens in and around Monmouth County, New Jersey.[1] Specifically, he was charged with eighteen counts of making threatening communications in violation of 18 U.S.C. § 875(c), six counts of conveying false information concerning the use of an explosive device in violation of 18 U.S.C. § 844(e), and nine counts of making threating communications with intent to extort

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] In addition to threatening individuals by phone, text message, and email, Hafner falsely reported bomb threats in connection with various government offices, a police department, two law firms, and at least one public venue. Similarly, he instigated a swatting incident against one of his victims (as discussed in greater detail below).

in violation of 18 U.S.C. § 875(b). Initially, Hafner elected to go to trial and filed pre-trial motions seeking to (1) represent himself, and (2) dismiss the indictment on both due process and Speedy Trial Act grounds. The District Court denied the latter of his pre-trial motions on November 20, 2020. However, while the Court was considering his motion to proceed pro se, Hafner became so loud and irate that U.S. Marshals were forced to escort him from the courtroom.[2] The Court declared a mistrial and ordered a competency evaluation at the request of defense counsel.

After two psychologists diagnosed Hafner with malingering, the Court determined he was indeed competent to stand trial. And on May 17, 2022, his second trial began. At the outset, the Court conducted a hearing under *Faretta v. California*, 422 U.S. 806 (1975), to resolve Hafner's pending motion to represent himself. Based on his responses to a colloquy regarding his competency, his conduct in past proceedings, evaluations performed by court-appointed mental health professionals, and observations of him over time, the Court concluded that "Hafner's conduct [would] be obstreperous and manipulative enough to justify denying his request to proceed pro se." DA 501-03. Accordingly, it denied his motion and proceeded to empanel a jury.

In the meantime, defense counsel notified the Court that plea negotiations were underway. Notably, negotiations took place after Hafner requested that his counsel speak with Government counsel about the possibility of a plea agreement. Hafner requested that

---

[2] Notably, this was not the first time that Hafner disrupted proceedings. At a conference following his arraignment, for example, he "became belligerent and began profaning and disrespecting the Government's attorneys and the Court." DA 3-4. His removal from the conference followed.

3

any such agreement preserve his right to appeal pre-trial rulings, but the Government rejected this proposal. Thereafter, the parties entered a written plea agreement, which defense counsel reviewed with Hafner. For example, counsel discussed the strength of the evidence against him and explained that he had limited odds of success at trial. However, defense counsel specifically advised Hafner to reject the agreement if his primary objective was to preserve pre-trial rulings for appeal. Hafner nonetheless agreed to plead guilty to three counts of the indictment. And as part of his agreement, he admitted under oath to engaging in the criminal activity alleged in the remaining counts.

At his change-of-plea hearing, Hafner attested that he understood the plea agreement "fully" and that he "want[ed] to plead guilty pursuant to this plea agreement." SA 7. The District Court found, among other things, that Hafner: (1) was fully satisfied with his counsel's representation; (2) understood the trial rights he was giving up by pleading guilty; and (3) voluntarily signed the plea agreement. Thus, following a factual colloquy regarding the conduct underlying his indictment, the Court found Hafner was competent, capable, and aware of the consequences of entering his guilty plea. It therefore accepted his plea and dismissed the remaining counts against him.

However, Hafner changed his mind approximately one month later, whereupon he advised defense counsel that he intended to withdraw his guilty plea. Around the same time, Hafner submitted a letter to the Court expressing his dissatisfaction with counsel and declaring his innocence. According to Hafner, defense counsel had not told him his plea would result in a waiver of pre-trial motions. On July 28, 2022, the District Court held a conference to resolve Hafner's claims. In the aftermath of that conference, it relieved his

4

counsel and appointed substitute counsel. And, with the assistance of replacement counsel, Hafner moved to withdraw his plea as involuntary. In support of this request, he again asserted that prior defense counsel provided incorrect advice regarding the preservation of various pre-trial rulings.[3]

On November 24, 2022, the District Court denied Hafner's motion. It noted that prior counsel expressly advised him to go to trial if he was concerned with his right to appeal. Moreover, it concluded that he failed to demonstrate prejudice because he accepted the guilty plea notwithstanding defense counsel's advice. Accordingly, the Court found that Hafner had not satisfied his burden of demonstrating a fair and just reason to withdraw his guilty plea.

In the aftermath of this decision, circumstances grew volatile. Hafner repeatedly called his prior defense counsel and left more than 100 voicemail messages of a threatening and intimidating nature toward him and District Judge Shipp. As a result, the Court permitted Hafner's substitute counsel to withdraw, and Judge Shipp recused himself. Hafner's case was thus re-assigned to Judge Quraishi, who appointed new counsel to represent Hafner for sentencing. Sentencing counsel renewed Hafner's motion to withdraw and included an additional ineffective-assistance-of-counsel claim based on prior counsel's failure to move to dismiss the indictment for improper venue. And in July of 2023, the Court rejected Hafner's motion to withdraw.

---

[3] Specifically, Hafner focused on the District Court's pre-trial rulings with respect to his motions to (1) represent himself, and (2) dismiss on due process and speedy trial grounds.

5

At the sentencing hearing on December 7, 2024, the Court adopted an advisory sentencing range of 135 to 168 months under the Guidelines. In calculating this range, it applied a six-level sentencing enhancement for conduct evincing an intent to carry out a threat based on a swatting incident Hafner instigated against one of his victims. Additionally, the Court applied a two-level enhancement for obstruction based on Hafner's repeated threats toward prior defense counsel and Judge Shipp. Although neither party filed a motion to depart from the advisory sentencing range, the Court imposed a sentence of 240 months.

On appeal, Hafner challenges the District Court's denial of his motion to withdraw his guilty plea. He also challenges its application of both sentencing enhancements and its upward variance.[4]

## II. Jurisdiction

The District Court had jurisdiction over Hafner's federal offenses under 18 U.S.C. § 3231. We have jurisdiction over his challenges on appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## III. Discussion

### A. The District Court did not abuse its discretion by denying Hafner's motion to withdraw his guilty plea.

---

[4] Hafner asserts a slew of preliminary challenges in Appeal No. 26-1120, including that the District Court erroneously (1) denied his motion to disqualify Judge Quraishi, (2) declined to reconsider its decision that Hafner had forfeited his right to counsel, (3) concluded it was not necessary to hold a hearing to determine whether appellate counsel had a conflict of interest, (4) determined that appellate counsel was not conflicted, and (5) denied his motion to disqualify Alina Habba as the U.S. Attorney for the District of New Jersey. For the reasons stated by the District Court on December 16, 2025, we reject these challenges. Thus, the motion for summary affirmance in No. 26-1120 is granted.

6

Rule 11 of the Federal Rules of Criminal Procedure governs withdrawal of plea agreements and guilty pleas by criminal defendants. Thereunder, a criminal defendant's right to withdraw a guilty plea is not absolute. *See United States v. James*, 928 F.3d 247, 253 (3d Cir. 2019) (citing *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001)). Indeed, "[o]nce a court accepts a defendant's guilty plea, [he] is not entitled to withdraw that plea simply at his whim." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). A criminal defendant who seeks to do so after the trial court accepts the plea and before sentencing must show a "fair and just reason" for withdrawal. Fed. R. Crim. P. 11(d)(2)(B); *see Jones*, 336 F.3d at 252. Moreover, his burden is "substantial." *United States v. Agarwal*, 24 F.4th 886, 890 (3d Cir. 2022).

"A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Jones*, 336 F.3d at 252 (internal quotation marks omitted). A district court must instead consider each of the following factors: "(1) whether the defendant asserts his innocence; (2) the strength of [his] reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Id.* Moreover, we will not disturb a district court's conclusions on appeal unless "no reasonable person would adopt [its] view." *James*, 928 F.3d at 253 (quoting *United States v. Steiner*, 847 F.3d 103, 110 (3d Cir. 2017)).

In his appeal, Hafner does not dispute the District Court's conclusion that the Government would be prejudiced by his withdrawal. Nor would we, given that withdrawal

7

would require the Government to prepare for trial yet again. Still, Hafner contends that the District Court abused its discretion by concluding that he failed to establish a sufficient reason to withdraw his plea.[5] To the contrary, he argues that he established a sufficient reason for withdrawal based on ineffective assistance of counsel.[6] We disagree.

"Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) (cleaned up). As a result, courts will permit a defendant to withdraw a guilty plea where he can establish an ineffective-assistance-of-counsel claim. *Jones*, 336 F.3d at 253–54. In order to prevail, the defendant must demonstrate (1) that counsel's representation was deficient, and (2) that he was prejudiced by counsel's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The second prong requires the defendant to demonstrate "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

---

[5] Hafner also contends that the Court erroneously concluded that he failed to assert his innocence. We need not address Hafner's first contention, however, because we perceive no error in the Court's conclusion that Hafner failed to establish a sufficient reason to withdraw his plea.

[6] Apart from his ineffective-assistance-of-counsel claim, Hafner argues that he has presented a sufficient reason for withdrawal based on (1) the denial of his Sixth Amendment right to self-representation, (2) improper venue, and (3) the denial of his Fifth Amendment due process rights and Sixth Amendment speedy trial rights. But Hafner does not dispute that "these issues are not properly before this court." Opening Br. 32. We thus decline to consider them. Moreover, Hafner asserts that his state of mind at the time he entered his guilty plea constitutes sufficient reason for its withdrawal. However, he has not cited to any authority or so much as asserted a standard of review for this claim. Accordingly, we reject this argument as forfeited.

8

Hafner contends he received ineffective assistance because defense counsel incorrectly advised that his unconditional guilty plea would not waive his right to appeal pre-trial rulings concerning, among other things, self-representation, due process, and speedy trial rights. However, we decline to consider whether Hafner's representation was deficient because he failed to demonstrate a reasonable probability that he would not have pleaded guilty but for defense counsel's alleged errors. Indeed, he instructed defense counsel to seek a plea deal on the first day of his second trial. Moreover, Hafner admits that he accepted the deal after a discussion with defense counsel regarding both the strength of the evidence against him and his limited odds of success at trial. Further defense counsel admonished Hafner not to accept the plea agreement if he had any reservations regarding his ability to appeal pre-trial rulings. And Hafner ultimately admitted that defense counsel told him acceptance of the plea deal "may prevent [him] from appealing those issues." DA 17, 575.

The District Court considered this evidence and found that Hafner took the plea deal despite counsel's stated belief that doing so would result in a waiver of his right to appeal pre-trial rulings, and despite counsel's repeated admonitions not to plead guilty if the ability to appeal those rulings was important to him. The Court therefore concluded that Hafner failed to demonstrate prejudice. We perceive no error based on the record before us.

**B. The District Court Did Not Err in Sentencing Hafner to 240 months.**

9

Apart from his withdrawal challenge, Hafner takes issue with the sentence imposed by the District Court. As we have previously explained, federal sentencing follows a three-step framework. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). First, a district court must calculate a defendant's sentence under the Guidelines. *Id.* Second, the court must rule on any motions for departure from the advisory range calculated from the Guidelines. *Id.* Third, it must exercise its discretion in considering the relevant 18 U.S.C. § 3553(a) factors to set a sentence. *Id.* Hafner contends that the District Court erred at steps one and three.

Notably, appellate review of sentencing proceeds in two stages. First, we "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). Specifically, we review the court's factual findings and application of the Guidelines to the facts for clear error. *United States v. Rodriguez*, 40 F.4th 117, 120–21 (3d Cir. 2022). And "[w]e find clear error if, when reviewing the entire record, we are left with the definite and firm conviction that a mistake has been committed." *United States v. Caraballo*, 88 F.4th 239, 244 (3d Cir. 2023) (citation and internal quotations omitted).

Second, if no reversible procedural error occurred, we consider whether the district court imposed a reasonable sentence under an abuse-of-discretion standard. *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008) (citing *Gall*, 552 U.S. at 51). If the court determines that "the Guidelines range is too low to satisfy 18 U.S.C. § 3553(a), the district judge must explain why this is so and vary upward." *United States v. Fisher*, 502 F.3d 293, 308 (3d Cir. 2007). And "[a]s long as a sentence falls within the broad range of possible

10

sentences that can be considered reasonable in light of the [Section] 3553(a) factors, we must affirm." *Wise*, 515 F.3d at 218. "In other words, if the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).

Hafner argues that the District Court committed a procedural error by calculating his sentence based on inapplicable enhancements under Sections 2A6.1(b)(1) and 3C1.1 of the Guidelines. He also contends that the Court erred by imposing an unreasonable sentence because it failed to consider all Section 3553(a) factors. We disagree.

### 1. The District Court did not err in applying a sentencing enhancement for conduct evidencing an intent to carry out threats.

Section 2A6.1(b)(1) of the Guidelines provides a six-level sentencing enhancement where the defendant is convicted of sending threatening communications and the defendant's offense "involved any conduct evidencing an intent to carry out such threat." U.S.S.G. § 2A6.1(b)(1). In determining whether this enhancement applies, the court must consider conduct that occurred during the offense, as well as pre-offense conduct that is "substantially and directly connected to the offense, under the facts of the case taken as a whole." *See* U.S.S.G. 2A6.1, cmt. n.1. Moreover, we have upheld the application of an enhancement under Section 2A6.1(b)(1) where the defendant engaged in an overt act evidencing an intent to carry out a threat after it was communicated. *See*, *e.g.*, *United States v. Green*, 25 F.3d 206, 208 (3d Cir. 1994) (upholding application of an enhancement under

11

Section 2A6.1(b)(1) where the defendant left a threatening message for a postal inspector and asked a police officer to provide the postal inspector's home address three days later).

In this case, record evidence supports that Hafner engaged in conduct with the intent to carry out threats against one of his victims. Indeed, as the District Court heard and credited, Hafner called the office of the former assistant prosecutor that prosecuted a juvenile case against him. On that call, he threatened to kill the former assistant prosecutor and his spouse. Then, less than twenty-four hours later, Hafner dialed the police department in the municipality where the former assistant prosecutor resided, purported to be the former assistant prosecutor, and stated "I think I just killed my wife. I have a gun." DA 769.

In response to Hafner's call, the police mounted an armed response, and the former assistant prosecutor woke to uniformed officers wearing body armor, screaming, and brandishing a shotgun. At sentencing, the District Court heard and credited these events. Moreover, it found that the former assistant prosecutor could have "easily" been harmed in light of the armed response by local authorities. DA 770. Accordingly, the Court concluded that an enhancement was warranted under Section 2A6.1(b)(1) because Hafner's call to the police demonstrated an intent to carry out his threat to kill the former assistant prosecutor. We perceive no error in that determination based on the record before us.

### 2. The District Court did not err in applying an obstruction-of-justice enhancement.

Section 3C1.1 of the Guidelines provides a two-level sentencing enhancement if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the

administration of justice with respect to the investigation, prosecution or sentencing."

U.S.S.G. § 3C1.1. Section 3C1.1 does not define obstruction, but the accompanying application notes offer an illustrative list of conduct that triggers this enhancement. *See* U.S.S.G. § 3C1.1, cmt. n.4 (listing "types of conduct to which this adjustment applies"); *see also United States v. Green*, 617 F.3d 233, 238 (3d Cir. 2010) (referencing conduct described in the application notes). That list includes, for example, "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1, cmt. n.4(A). Consistent with this comment, courts have construed Section 3C1.1 to apply where the defendant threatens defense counsel. *See*, *e.g.*, *United States v. Goldberg*, 937 F. Supp. 1121, 1133 (M.D. Pa. 1996), *aff'd*, 133 F.3d 911 (3d Cir. 1997) (applying an enhancement under Section 3C1.1 "based on [defendant's] threat to the life of defense counsel"). So too where the defendant threatened a presiding judge. *See*, *e.g.*, *United States v. Judd*, 315 F. App'x 35, 38 (10th Cir. 2008) (concluding Section 3C1.1 applied where the defendant "went to a judge's private home and demanded a sample of the judge's signature"); *United States v. Gomez*, No. CRIM. 06-443-02, 2009 WL 1350989, at *2 (E.D. Pa. May 11, 2009) (applying an enhancement under Section 3C1.1, as stipulated to by the parties, where the defendant threatened to murder the presiding judge early in the proceedings).

In this case, record evidence supports that Hafner obstructed the administration of justice by threatening both defense counsel and Judge Shipp. Indeed, Hafner's threats were summarized and submitted to the District Court in a pre-sentencing memorandum from the Department of Justice. That memorandum highlighted several of the most brazen threats

13

included among 169 separate voicemails that Hafner left for defense counsel between February 26, 2023 and March 13, 2023. One such voicemail stated, among other things: "I am going to destroy you[,] and I know where you live." PSR ¶ 106(a). In another, Hafner stated: "You are both going to pay," and "[y]ou do not know what I'm gonna do to the [Judge]. You'll find out at some point but you're not gonna wanna know." PSR ¶ 106(d). Similarly, on March 9, 2023, Hafner left a voice message in which he told defense counsel: "[Y]ou have to be lucky every day for the rest of your life. Judge [Shipp] has to be lucky every single day for the rest of his life." PSR ¶ 106(e). And on March 11, 2023, Hafner stated: "I will come for you. I will come for [Judge Shipp]." PSR ¶ 106(i).

At sentencing, the District Court reviewed and credited the record of these calls. In doing so, it found that Hafner threatened defense counsel and Judge Shipp. Moreover, it heard and credited evidence that Hafner did so to ensure that Judge Shipp would be recused from his case. The Court thus concluded that Hafner made these threats to disrupt the proceedings. Accordingly, it determined that an enhancement was warranted under Section 3C1.1. We discern no error in that determination.

### 3. The District Court did not err in imposing an above-Guidelines sentence.

In addition to his enhancement-based challenges, Hafner contends that the District Court abused its discretion by sentencing him to 240 months in prison. Specifically, he notes that the Court calculated a sentence range of 135 to 168 months under the Guidelines but imposed a much higher sentence. And according to Hafner, the upward variance was

14

unreasonable because the Court failed to consider his criminal history as well as mental and emotional health factors under Section 3553(a). We disagree.

As an initial matter, "a district court's failure to give mitigating factors the weight a defendant contends they deserve does not make a sentence substantively unreasonable." *United States v. Seibert*, 971 F.3d 396, 402 (3d Cir. 2020) (cleaned up). "All that is required is that 'the record makes clear the court took the [pertinent] factors into account in sentencing.'" *United States v. Young*, 634 F.3d 233, 243 (3d Cir. 2011) (alteration in original). And in this case the District Court plainly considered Hafner's criminal history along with his mental and emotional health.

Indeed, the Court explicitly observed that Hafner "ha[d] no criminal history." DA 789. But it concluded that the volume of crimes Hafner had committed during the pendency of his criminal case "outweigh[ed] the fact that [he was] in a criminal history category one." DA 789. Moreover, in direct response to defense counsel's argument that Hafner's mental and emotional health factors warranted a sentence on the lowest end of the guidelines, it explained that the seriousness of Hafner's crimes, his failure to accept responsibility, and the need for deterrence warranted an upward variance. And based on Hafner's "history and characteristics," the Court specifically required that Hafner submit to "mental health treatment" as a condition of supervised release following his imprisonment. DA 792–93. In this context, we are well satisfied that the Court considered Hafner's criminal history along with his mental and emotional health factors.

\*　　　\*　　　\*

15

For the reasons stated, we affirm the denial of Hafner's motion to withdraw his guilty plea as well as his sentence.